JOURNAL ENTRY and OPINION
{¶ 1} Appellant Marlon McSwain appeals from his convictions for three counts of kidnapping, one with a sexual motivation specification, aggravated burglary, aggravated robbery, and two counts of felonious assault. He asserts that the evidence was insufficient to support his convictions for aggravated robbery and one of the felonious assault charges; the prosecutor made improper comments; the court gave an erroneous instruction regarding stipulations and failed to include written instructions in the record; the court erroneously excused a juror; and the court erred in several respects in sentencing him.
 {¶ 2} We find the evidence was insufficient to support appellant's conviction for aggravated robbery. However, there was sufficient evidence to find appellant guilty of the lesser included offense of robbery, so we reverse his conviction for aggravated robbery, find appellant guilty of robbery, and remand for resentencing on the lesser charge. We also find the court erred by convicting and sentencing appellant for allied offenses, so we vacate these convictions and remand for the limited purpose of merging the convictions and resentencing on these offenses. Finally, we also remand this matter for the limited purpose of allowing the court to inform appellant of the potential consequences of violating post-release control. We affirm appellant's convictions and sentences in all other respects.
 Facts and Procedural History {¶ 3} Appellant was charged in an eleven-count indictment filed May 27, 2003, with one count of rape (Count 1), five counts of kidnapping with sexual motivation specifications (Counts 2, 3, 4, 8, and 9), one count of aggravated burglary (Count 5), two counts of aggravated robbery (Counts 6 and 7), and two counts of felonious assault (Counts 10 and 11). The case proceeded to trial on June 26, 2003. The court declared a mistrial with respect to count one, rape; the prosecutor subsequently dismissed this charge. The jury found appellant not guilty of two of the kidnapping charges and one count of aggravated robbery. It found appellant guilty of three kidnapping charges, two counts of felonious assault, aggravated burglary and aggravated robbery.
 {¶ 4} The court imposed six-year sentences on each of the two kidnapping charges in counts two and three, but ordered those counts merged for purposes of sentencing. Likewise, the court ordered seven-year sentences on each of the two felonious assault charges in counts ten and eleven, and ordered those counts merged for sentencing purposes. The court further imposed concurrent six-year sentences on the aggravated burglary and aggravated robbery charges in counts five and seven, and a seven-year sentence on the third charge of kidnapping in count nine. Finally, the court ordered that the sentences imposed on counts two, seven, nine and ten should run consecutively, for a total sentence of twenty-six years' imprisonment, followed by a period of five years' post-release control.
 {¶ 5} At trial, the jury heard the testimony of the two victims, Jennifer Mayer and Michelle Haas; their neighbors, Kathryn and Kevin Bishop; police officers Edward Mixon, Katrina Ruma, Michael Baker, Patrick Andrejcak, and Margery Gerbec; registered nurse Judy Gibbons; and the appellant.
 {¶ 6} Ms. Mayer testified that she lived in the downstairs half of a duplex at 8702 Jeffries in the City of Cleveland Her friend, Michelle Haas, lived upstairs. Mayer did not have a clear memory of what had happened on the night of February 2, 2003 because she had been drinking vodka and wine. She said she found the appellant in her home, but was not sure how he got there. She poured him a mug full of water, and he used her bathroom.
 {¶ 7} Appellant then tried to push Mayer into the bedroom, telling her that he was going to have sex with her. She told him he would not want to do that because she was bleeding heavily from an abortion which had been performed the day before.
 {¶ 8} Haas arrived, and Mayer and Haas went into another room, where Mayer told Haas what had been happening and said she wanted appellant to leave. They returned to the living room and Haas told appellant to leave. "The next thing I [Mayer] knew, she [Haas] was on the floor." Appellant also struck Mayer in the face with an empty mug. Mayer then found herself on the couch with Haas.
 {¶ 9} Appellant put Mayer in a closet. He pushed furniture in front of the door to wedge it shut. Mayer dislodged a metal bar in the closet and kicked the door repeatedly until it opened far enough for her to squeeze out. She saw appellant raping Haas, so she struck appellant with the metal bar. The next thing Mayer knew was that she was on the dining room floor, and appellant had the pipe and the mug in his hands. She did not remember the appellant leaving the house.
 {¶ 10} Mayer was taken to Marymount Hospital, but she refused treatment. Her boyfriend took her to his house, where she stayed for several weeks. She suffered a gash above her left eye, two black eyes, a swollen, cut mouth, and a cut on her arm. She has permanent scars as a result of this incident.
 {¶ 11} Haas testified that she came home from her employment as a cocktail waitress at approximately 3:00 a.m. and stopped in at Mayer's home to visit. Appellant was in the room. Mayer asked Haas to come with her into another room, where Mayer told Haas that appellant was trying to rape her. Haas asked appellant to leave, but he did not, instead pacing the floor in an aggressive way. Haas moved toward the door and tried to grab her purse, which had a cellular telephone in it, but appellant grabbed her, swung her around and punched her in the jaw. He then told Haas to get on the couch, which she did. Mayer would not sit down, however, so appellant punched her in the mouth, knocking her onto the couch as well. He continued to pace in front of them.
 {¶ 12} Appellant reached into a side pocket of Haas's purse and removed $300 in cash, then dumped the contents of the purse looking for more money. He instructed Haas and Mayer to empty their pockets. Haas gave him the key to her car. He checked her coat pockets and underneath her bra.
 {¶ 13} Appellant instructed Mayer to get into a closet. He wedged the door shut with furniture and a broomstick. He then instructed Haas to take off her clothes. He threatened to hit her with a large glass mug. She undressed, and appellant then pulled down his pants, got on top of her, and inserted his penis into her.
 {¶ 14} When Mayer got out of the closet, appellant got up and pulled up his pants. Mayer attempted to strike him with the pole, but he somehow got it away from her. Appellant struck Mayer with the mug three times, rendering her unconscious. He then took Haas's car and left, warning Haas that if she did "anything" he would come back and "slice our throats."
 {¶ 15} Haas then ran next door and called police. She said she had a swollen jaw for a few days which prevented her from eating, as well as a bruise and some cuts from broken glass.
 {¶ 16} Appellant testified that he was out selling drugs on the night in question. He met Mayer that evening and gave her his telephone number. Mayer called him at approximately 2:00 a.m., and they met at a gas station on 49th Street and Broadway shortly thereafter. Mayer told appellant that there were people at her house who wanted to buy drugs, so they went there. Appellant denied assaulting Mayer or attempting to rape her. He said Mayer wanted to buy drugs, but did not have any money. She told him her friend would have money when she came home.
 {¶ 17} Appellant testified that Haas gave him a glass of water, and he used her bathroom. When he came out of the bathroom, Haas asked him to leave. He checked his coat pocket and discovered that some of his drugs were missing. He asked Mayer where his "shit" was; she asked what he was talking about. He patted down her pockets. Then he got angry, punched her, and threw her to the ground.
 {¶ 18} Appellant then approached Haas and asked her where his drugs were. Haas emptied her pockets while he looked through her purse, but he did not find his drugs. He then punched Haas.
 {¶ 19} Appellant said that as he was looking through the contents of Haas's purse on the floor, Mayer struck him in the back with a metal pole. He stood up and she swung at him again. He grabbed the pole and they struggled over it. The pole struck Mayer in the mouth. He then left on foot.
 {¶ 20} Appellant denied locking Mayer in the closet. He denied ordering Haas to undress and denied raping her. He denied hitting anyone with a beer mug. He denied taking Haas's car.
 Law and Analysis Sufficiency of the Evidence (Aggravated Robbery) {¶ 21} In his first assigned error, appellant argues that the evidence was insufficient to support his conviction for aggravated robbery. Even though appellant's Crim.R. 29(A) motion did not challenge the sufficiency of the evidence on this charge, the Ohio Supreme Court has stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence, so this issue has not been waived.State v. Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57; State v.Carter, 64 Ohio St.3d 218, 223, 1992-Ohio-127.
 {¶ 22} In evaluating a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 23} Appellant contends the evidence was insufficient to support a finding that he inflicted or attempted to inflict serious physical harm upon Ms. Haas. The state agrees that serious physical harm was an essential element of the offense of aggravated robbery. The Ohio Revised Code defines "serious physical harm" as "[a]ny physical harm that carries a substantial risk of death"; or "involves some permanent incapacity" or "some temporary, substantial incapacity"; or "involves some permanent disfigurement" or "temporary, serious disfigurement"; or "involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 24} Appellant punched Ms. Haas once in the jaw, causing her jaw to swell. There is no evidence that she obtained medical treatment. She testified that the swelling prevented her from eating for a few days. We cannot say that this was a "temporary, substantial incapacity" or "temporary, serious disfigurement." There is no evidence of any permanent injury, or of any pain which caused substantial suffering. Nor can we say that a rational trier of fact could construe this single blow as an attempt to cause "serious physical harm." Therefore, we must agree with appellant that the evidence was insufficient to support his conviction for aggravated robbery.
 {¶ 25} The state urges us to consider that appellant sexually assaulted Ms. Haas in assessing whether appellant inflicted or attempted to inflict serious physical harm. The definition of aggravated robbery requires that offender inflict or attempt to inflict serious physical harm "in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense." The alleged rape did not occur in the course of the theft or in fleeing thereafter. Therefore, we do not consider it in assessing whether appellant inflicted serious physical harm on Ms. Haas. Cf. State v. Malone (1984), 15 Ohio App.3d 123.
 {¶ 26} Because the sufficiency of the evidence was not raised below, and appellant did not request an instruction on the lesser-included offense of robbery, the jury was not given the opportunity to consider the offense of robbery. Nevertheless, there was ample evidence to support a jury finding that appellant committed robbery. Robbery is a lesser included offense of the form of aggravated robbery with which appellant was charged:
 {¶ 27} "[W]hen the initial charge is aggravated robbery under subdivision (A)(2) of R.C. 2911.01, * * * the pertinent element of the offense is that the accused inflicted or attempted to inflict serious physical harm on another. To do so, the accused must necessarily use `force,' defined in R.C. 2901.01(A) as `any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.' Thus, an aggravated robbery during which serious physical harm is inflicted or attempted cannot be committed without also committing a robbery. Further, to prove robbery, it is not necessary to prove one of the elements of aggravated robbery: that is, the actual or attempted infliction of serious physical harm. Finally, as a felony of the second [or third] degree, robbery is a lesser offense than aggravated robbery, a felony of the first degree. Using the tests set forth in State v. Wilkins (1980),64 Ohio St.2d 382, the crime of robbery under R.C. 2911.02 is a lesser-included offense of the crime of aggravated robbery under R.C. 2911.01(A)(2)." State v. Washington (1983),8 Ohio App.3d 314, 315.
 {¶ 28} Accordingly, we reverse the conviction for aggravated robbery, find appellant guilty of the lesser included offense of robbery, and remand for resentencing on that charge. See Crim.R. 33(A)(4). Sufficiency of the Evidence (Felonious Assault)
 {¶ 29} In his second assigned error, appellant argues there was insufficient evidence to support one of his two convictions for felonious assault on Ms. Mayer, because there is no evidence that he inflicted serious physical harm upon her. Count ten of the indictment charged that appellant "did knowingly cause serious physical harm" to Ms. Mayer. The evidence disclosed much more serious injuries to Ms. Mayer than to Ms. Haas. Appellant struck Ms. Mayer with sufficient force to render her unconscious. Unconsciousness is a state of temporary, substantial incapacity sufficient to constitute serious physical harm. State v.Mushrush (1999), 135 Ohio App.3d 99, 1081. Therefore, we overrule the second assignment of error.
 Prosecutorial Misconduct {¶ 30} Appellant's fourth assignment of error contends that the prosecutor improperly attacked his credibility on cross-examination by accusing him of fabricating his testimony based on the testimony of other witnesses. Appellant's counsel did not object to this line of questioning at trial, so we review this matter for plain error.
 {¶ 31} Appellant claims that the cross-examination "improperly suggested to the jury that Mr. McSwain was less credible because he exercised" his constitutional right to be present at trial. The prosecutor's questioning did not challenge appellant's credibility because he was present at trial, but because he had the opportunity to fabricate exculpatory testimony consistent with other testimony he heard at trial. Once appellant waived his right against self-incrimination by testifying, his credibility was at issue and could properly be challenged by a charge of recent fabrication. Appellant was given the opportunity to deny this charge, and he did so. Therefore, we find no prejudicial error in this line of questioning.
 {¶ 32} Appellant's third assignment of error challenges comments made by the prosecutor during closing argument. First, appellant argues that the prosecutor improperly commented on the lack of corroboration for appellant's testimony. Appellant claims that this comment violated "an absolute Fifth Amendment right not to put forth any evidence in corroboration of his testimony." Assuming such a right exists (a conclusion we do not reach),[1] the prosecutor's comment did not violate it. The prosecutor actually stated that appellant "offered you a version of the events that is completely unsupported by anything else you heard that day." This does not comment on the defendant's failure to offer corroborating testimony. It simply says his testimony was not consistent with the other testimony the jury heard.
 {¶ 33} Appellant also complains that the prosecutor improperly commented that only the jury could correct the injustices done to the victims in this case, thus appealing to the jury's emotions rather than asking them to adjudicate the case based upon the evidence. Appellant's counsel did not object to this argument, so we must evaluate it for plain error.
 {¶ 34} At the conclusion of his closing argument, the prosecutor commented that "justice is what occurs when an injustice is corrected. What happened to Michelle Haas and what happened to Jennifer Mayer were injustices and they are injustices only you can correct. The evidence is there, folks. Use your reason and common sense; and when you do, find this defendant guilty of the crimes he has been charged with." This modest appeal to the jury's sympathies cannot be viewed as prejudicial in the context of the entire argument. See State v.Lyons, Cuyahoga App. No. 80220, 2002-Ohio-3424, ¶¶ 11-13. Therefore, we overrule the third assignment of error.
 Jury Instructions {¶ 35} Appellant's fifth assignment of error contends that the court deprived him of due process by failing to include the written jury instructions in the record. This argument is simply inaccurate. The jury's copy of the instructions was preserved in an envelope with the exhibits from the trial. Therefore, we overrule the fifth assignment of error.
 {¶ 36} Appellant's seventh assignment of error claims that the court deprived him of his right to a trial by jury by instructing the jury that it must accept stipulated facts as true. Appellant's counsel did not object to the instruction on stipulations, so we must examine it for plain error. We find no plain error because appellant could not have been prejudiced by the instruction. Appellant testified that he was present at the scene; there was no conflict in the evidence as to his identity. The only question was whether appellant committed certain crimes at the scene. Therefore, any error in instructing the jury that the stipulations "are to be accepted by you as facts" did not affect appellant's substantial rights by affecting the outcome of the trial. We overrule the seventh assignment of error.
 Excusing a Juror {¶ 37} Appellant complains that the court erred by altering the racial composition of the jury when it excused an African-American juror and replaced her with an alternate. At the conclusion of the first day of trial, the jurors were instructed to return at 8:30 a.m. the following day. One juror did not appear. The bailiff contacted the juror at approximately 10:05 a.m. The juror said that she had forgotten and that she was on her way. The court indicated that it would wait until 10:30 for the juror to arrive. At 10:35 a.m., the court replaced this juror with one of the alternates.
 {¶ 38} Batson v. Kentucky (1986), 476 U.S. 79, is the only authority appellant cites for the proposition that the dismissal of this juror was erroneous. Batson does not support appellant's claim. Batson holds that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the jury solely by reason of their race. Here, the juror was not excluded from the jury based upon her race. She was included on the jury, and was only discharged when she caused a significant delay in the proceedings. There is no evidence that this juror was dismissed based upon her race. Therefore, we overrule the sixth assignment of error.
 Sentencing {¶ 39} Appellant's last five assignments of error challenge various aspects of his sentences. First, appellant argues that the court did not furnish sufficient reasons for its imposition of consecutive sentences. In order to impose consecutive sentences on an offender, the court must make three findings pursuant to R.C. 2929.14(E)(4). First, the court must find that "the consecutive service is necessary to protect the public from future crime or to punish the offender." Second, the court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Third, the court must make at least one of three other potential findings. Only one of these is relevant to this appeal:[2] The court must find that "the harm caused by the multiple offenses is so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(E)(4)(b). Pursuant to R.C. 2929.19(B)(2)(c), the court must give its reasons for imposing consecutive sentences.
 {¶ 40} The common pleas court explicitly found consecutive sentences were necessary to protect the public and were not disproportionate to the seriousness of the offender's conduct. Appellant argues that the court "never reasoned as to why it needed to run four different sentences consecutively, thus totaling 26 years of imprisonment, in order to adequately protect the public," and "was unclear as to its reasons for" finding consecutive sentences were not disproportionate to the seriousness of his conduct. However, the court reasoned that its sentence was "just a bit more than half of the possible sentence that you could have received in this case," and "that this is the shortest prison term that I could give you that would protect the public and would adequately reflect the seriousness and brutality of your crimes." The court could properly consider the seriousness of the offenses and the protection of the public in tandem in deciding to impose consecutive sentences.
 {¶ 41} Appellant claims the common pleas court failed to make a finding that consecutive sentences were "not disproportionate to the danger the offender poses to the public." We disagree. The court both made this finding and stated its reasons at the sentencing hearing, when the court stated:
 {¶ 42} "* * * Hitting these women in the face with the blows that were evidenced here is extreme brutality.
 {¶ 43} "I guess locking one of them in a closet and letting her listen to the brutality being played out on her roommate, consecutive sentences in these instances will not be disproportionate to the danger this drug dealer possesses [sic — poses] to the public."
 {¶ 44} Finally, appellant contends that the court never articulated the specific harm to the victims which was "so out of the ordinary as to require consecutive sentences." This argument is based on a faulty premise, that a finding of extraordinary harm is necessary to impose consecutive sentences. To the contrary, R.C. 2929.14 directs the court to consider the magnitude of the harm or its unusualness as factors in assessing whether a single prison term would adequately reflect the seriousness of the offender's conduct.
 {¶ 45} The court here stated that the longest prison term for any one offense would have been ten years, and "that would not be adequate for the kidnapping of two women, barricading of one in a closet, the severe brutality of the punching in the face with these heavy mugs, and attempting to have sexual contact with one of them."
 {¶ 46} We hold that the court adequately explained its findings and reasons in support of imposing consecutive sentences at the sentencing hearing. Therefore, we overrule the eighth assignment of error.
 {¶ 47} Next, appellant argues that the court erred by failing to ensure that the total sentence was proportionate to the sentences given to similarly situated offenders. Although R.C.2929.11(B) directs trial courts to impose felony sentences which are "consistent with sentences imposed for similar crimes by similar offenders," the legislature has not identified the means by which the courts should attain this goal. Neither individual practitioners, government attorneys, trial courts nor appellate courts have the resources to assemble reliable information about sentencing practices throughout the state. State v. Haamid,
Cuyahoga App. Nos. 80161, 80248, 2002-Ohio-3243 (Karpinski, J., concurring). Identification of the data and factors which should be compared in deciding whether a crime or an offender is "similar" in itself would be a massive task, yet the identification of such data would be essential even to begin to build a database. Unless and until someone undertakes this daunting task, "appellate courts will be able to address the principle of consistency only to a very limited degree." Id.
 {¶ 48} Appellant did not supply the court with information regarding sentences imposed in "similar" cases for purposes of comparison. Instead, appellant argues in the abstract that certain mitigating factors should have caused the court to impose a lesser sentence than it did. Thus, in requesting a remand on this basis, he effectively demands reconsideration, not an assessment of the proportionality of the sentence. Accordingly, we overrule the ninth assignment of error.
 {¶ 49} Appellant next contends that the court erred by merging allied offenses for purposes of sentencing, rather than convicting him of only one of the two allied offenses. We agree. At the sentencing hearing, appellant argued that counts two and three, both kidnapping charges, were allied offenses, and that counts ten and eleven, both felonious assault charges, were also allied offenses. The state agreed that those charges should be merged. Nonetheless, in sentencing appellant, the court stated that "counts two and three and ten and eleven are going to be merged. I am going to put a sentence on each count, but they will merge." Thereafter, the court stated "[s]o on Counts two and three the Court is going to sentence you to six years on each count. They will be run, again, together," and "[o]n Counts ten and eleven, being felonious assaults, seven years on each count. Of course, again, they will run together." In its judgment entry, the court stated:
 {¶ 50} "The court imposes a prison term * * * of six years on each of counts two and three, counts merge for purposes of sentencing; * * * seven years on each of counts ten and eleven, merge[d] for purposes of sentencing. * * * *"
 {¶ 51} Under R.C. 2941.25, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." In this case, the court convicted and sentenced appellant on charges which the state agreed were allied. "[I]t is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently." State v. Sullivan, Cuyahoga App. No. 82816,2003-Ohio-5930, ¶ 40. "Therefore, the court should have merged the convictions for the two offenses rather than imposed concurrent sentences." Id. Therefore, we must vacate these convictions and sentences and remand for the limited purpose of merging the convictions on counts two and three and counts ten and eleven and resentencing.
 {¶ 52} Appellant next argues that the court improperly punished appellant for exercising his right to trial. He bases this argument on a statement the court made before trial began, and claims this statement constituted an implicit threat to treat appellant more severely if he went to trial, a threat which he claims the court then carried out.
 {¶ 53} Before trial, the court inquired about the status of plea negotiations, and specifically asked whether appellant was aware that he would get the benefit of the court's consideration of his remorse and acceptance of responsibility if he entered a guilty plea, but this could not be a consideration if the case went to trial. We cannot construe this statement as a threat to punish appellant more severely if he exercised his right to trial. It is merely an acknowledgement that different considerations may apply in sentencing based on a plea or after trial. Therefore, we overrule the eleventh assignment of error.
 {¶ 54} Finally, appellant claims the court erred by failing to advise him of the consequences of violating a term of post-release control. The court informed appellant that five years' post-release control was part of his sentence. "Therefore, the inclusion of post-release control in the judgment entry did not impose a sentence that had not been imposed at the hearing."State v. Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908, ¶ 22. For this reason, appellant's request that we vacate the term of post-release control imposed upon him is an inappropriate remedy. Nonetheless, we remand for the limited purpose of allowing the court to inform appellant of the potential consequences of violating post-release control, as required by R.C.2929.19(B)(3)(e). See State v. Greenleaf, Summit App. No. 21370, 2003-Ohio-5901, ¶ 8; State v. Rivers, Cuyahoga App. No. 81929, 2003-Ohio-3670, ¶ 41.
 Conclusion {¶ 55} For the foregoing reasons, we affirm appellant's convictions for aggravated burglary in count five, and kidnapping in count nine, and the consecutive sentences of six and seven years on those charges. We reverse the appellant's conviction and sentence for aggravated robbery under count seven, but find appellant guilty of the lesser included offense of robbery and remand for sentencing on that charge. We also vacate appellant's convictions and sentences under counts two, three, ten, and eleven, and remand for the limited purpose of merging convictions and resentencing for these offenses. Finally, we also remand for the limited purpose of allowing the court to advise appellant of the potential consequences of violating post-release control.
 {¶ 56} Thus, on remand, the common pleas court will first merge the convictions for the allied offenses under counts two and three and under counts ten and eleven, and will sentence appellant on the two charges which survive the merger. The court will also sentence appellant on the charge of robbery. The court will also advise appellant of the potential consequences of violating post-release control, the term of which has not been affected by this appeal.
 {¶ 57} This cause is reversed in part, vacated in part, and remanded to the lower court for further proceedings consistent with this opinion.
 {¶ 58} It is, therefore, considered that said appellant recover of said appellee his costs herein.
 {¶ 59} It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.
 {¶ 60} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. concurs in judgment only.
 Cooney, J. concurs in part and disssents in part with separateconcurring and dissenting opinion.
[1] "It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case." State v. Pritchard (Aug. 2, 2001), Cuyahoga App. No. 78497; also see State v. Hart, Cuyahoga App. No. 79564, 2002-Ohio-1084.
[2] The other two are related to the offender's criminal history, and are irrelevant here because this offender was never previously convicted of a crime.