DECISION AND JUDGMENT ENTRY
{¶ 1} Todd R. Wilson appeals his conviction and sentence for fleeing and eluding and thereby creating a substantial risk of serious physical harm to persons or property, a violation of R.C. 2921.331(B) and (C)(5)(a)(ii). Wilson contends that the Washington County Court of Common Pleas erred in permitting the testimony of a police officer who was not competent to testify because the officer was not in a uniform and a marked police cruiser at the time of Wilson's arrest. We disagree, because the officer was not on duty for the main purpose of enforcing traffic laws, and, therefore, the competency exclusion contained in Evid.R. 601(C) does not apply. Wilson also contends that the trial court erred when it instructed the jury on the elements of the enhancing specification, even after the trial court had granted his Crim.R. 29 motion to dismiss this element of the indictment. Because the trial court denied Wilson's Crim.R. 29 motion on the specification charge that Wilson created a substantial risk of serious physical harm, and because the record contains evidence supporting a finding that Wilson created a substantial risk of serious physical harm, we disagree.
 {¶ 2} Wilson next contends that the record does not contain sufficient evidence to support a guilty finding on the specification that he created a substantial risk of physical harm, and that his conviction is contrary to the manifest weight of the evidence. Because we find that the record contains evidence upon which any reasonable trier of fact could conclude that Wilson created a substantial risk of serious physical harm in the course of fleeing and eluding, and because our review of the entire record reveals that the jury did not lose its way and create a manifest miscarriage of justice in finding that Wilson fled, we disagree. Finally, Wilson contends that the trial court erred when it imposed a term of incarceration exceeding the minimum term of incarceration. Because we find that the record supports Wilson's sentence, and further because the trial court did not impose a sentence greater than the statutory maximum, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 3} On October 7, 2003, Detective Deron Alkire of the Washington County Sheriff's Office was on duty investigating a burglary. Det. Alkire was driving an unmarked sheriff's vehicle to the homes of witnesses to interview them in furtherance of the burglary investigation.
 {¶ 4} The same evening, Wilson and his friend, Jared Gillespie, met at Gillespie's home for drinks. After a couple of beers, Wilson and Gillespie went to the Valley Inn bar in Beverly, Ohio and continued drinking. When Wilson took Gillespie home, Gillespie directed Wilson to take County Road 109. Gillespie testified that CR 109 is the best route from the Valley Inn to his home for a driver who has been drinking, because the driver is less likely to encounter a police officer on CR 109 than on 339.
 {¶ 5} As Det. Alkire searched for a witness' home on CR 109, Wilson crossed a double yellow line and passed him. Det. Alkire immediately activated his siren and lights in order to stop Wilson and warn him about reckless driving. The vehicle's red and blue strobe lights were mounted to the visor inside the car. The siren Det. Alkire used was the same type and volume siren used on marked sheriff's vehicles. Local resident Roger Sampson heard the siren from inside his home, which sits one hundred to one hundred fifty yards off CR 109.
 {¶ 6} Each time Det. Alkire caught up to Wilson, Wilson sped up and increased the distance between their vehicles. Wilson drove between eighty and eighty-five miles per hour on the straight portions of the road, and forty to sixty miles per hour in the turns. Wilson drove left of center numerous times, even in curves and on hills that obstructed the view of oncoming traffic. Wilson also drove on the berm, and at one point, his tires left the roadway entirely. A number of structures and objects were located near the side of the road. In particular, there was a barn located within ten feet of the road, oil well pump jacks, fences, power lines, gas meters, and an electric substation close to the road.
 {¶ 7} CR 109 ends at the first stop sign the vehicles encountered after Det. Alkire began the chase. Wilson slowed to a stop approximately forty yards before the stop sign. Wilson did not attempt to flee on foot. When Det. Alkire approached the car, he could smell an odor of alcohol from Wilson's window. Wilson cooperated with Det. Alkire, and admitted that he had been drinking. He stated that he did not stop because he had been in an altercation with a gang at the bar, and he thought the gang members were chasing him.
 {¶ 8} The second officer who responded, Deputy Underwood, administered field sobriety tests, which Wilson failed. Wilson refused to take a breathalyzer test. Deputy Underwood arrested Wilson for operating a motor vehicle while under the influence of alcohol.
 {¶ 9} Gillespie told Det. Alkire that he was "terrified" during the chase, and that he asked Wilson what he was doing and why. At the trial, however, Gillespie testified that he never heard Det. Alkire's siren, that he did not tell Det. Alkire that he was frightened, and that he thought the vehicle following Wilson's was a volunteer firefighter's vehicle.
 {¶ 10} The Washington County Grand Jury indicted Wilson on one count of willfully operating a motor vehicle to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop, a violation of R.C.2921.331(B). The indictment included the enhancing specification contained in R.C. 2921.331(C)(5)(a)(ii), charging that the operation of the vehicle caused a substantial risk of serious physical harm to persons or property. The indictment did not include the specification contained in R.C. 2921.331(C)(5)(a)(i), which enhances the offense when offenders actually cause physical harm to persons or property. Wilson pled not guilty to the fleeing and eluding charge and specification, and the case proceeded to a jury trial.
 {¶ 11} At the close of the State's case, Wilson moved for a judgment of acquittal on the enhancing specification. Wilson asserted that the State failed to introduce evidence that his conduct "caused any serious physical harm to anybody, mailboxes, nothing," and that the State failed to prove that he created a substantial risk of physical harm. The court found that the State presented circumstantial evidence that Wilson created a substantial risk of serious physical harm, but that the State presented no evidence that Wilson proximately caused serious physical harm to persons. Therefore, though the State did not charge Wilson with the R.C. 2921.331(C)(5)(a)(i) specification, the court stated that it granted Wilson's motion on the specification related to causing physical harm.
 {¶ 12} The court specifically denied Wilson's motion on the specification related to whether Wilson created a substantial risk of serious physical harm. In its instructions to the jury, the court instructed the jury to determine whether Wilson's operation of his car "was a proximate or a direct cause of a substantial risk of serious physical harm to persons or property." Wilson did not object to the jury instructions.
 {¶ 13} The jury found Wilson guilty on the fleeing and eluding charge and on the enhancing specification. The trial court found that the shortest prison term would demean the seriousness of his offense and not adequately protect the public. Therefore, the trial court sentenced Wilson to two years in prison. Wilson did not object.
 {¶ 14} Wilson appeals, raising the following assignments of error: "I. The trial court erred when it permitted the State to introduce the testimony of an officer, who was not in a properly marked vehicle or uniform at the time the officer forced Mr. Wilson's vehicle to stop, and who was therefore not competent to testify, under R.C. 4549.13 through4549.16 and Evid.R. 601(C). * * * II. The trial court erred when it instructed the jury on the elements of the enhancing specification. * * * III. The trial court erred when it entered the judgment of conviction in the absence of sufficient evidence to establish Mr. Wilson's guilt of the specification, and when Mr. Wilson's conviction of the underlying offense of fleeing and eluding was against the weight of the evidence. * * * IV. The trial court erred when it imposed a term of incarceration that exceeded the minimum term of incarceration."
 II. {¶ 15} In his first assignment of error, Wilson argues that the trial court erred when it permitted the State to introduce Det. Alkire's testimony. Specifically, Wilson argues that the trial court erroneously determined that Det. Alkire was not engaged primarily in the enforcement of the traffic code when he stopped Wilson's vehicle, because Det. Alkire stopped Wilson for the purpose of enforcing the traffic code. Additionally, Wilson contends that to qualify for an exception to the competency rule requiring a uniform and a marked vehicle, Det. Alkire should have radioed for an officer in a marked cruiser to make the stop.
 {¶ 16} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, we will not reverse its judgment absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we may not substitute our judgment for the trial court's judgment. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 17} Pursuant to Evid.R. 601(C), "[e]very person is competent to be a witness except: * * * (C) An officer, while on duty for the exclusiveor main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute." (Emphasis added.) Evid.R. 601(C) reiterates R.C. 4549.13 through 4549.16 and preserves the provisions of those statutes. Thus, a law enforcement officer is not a competent witness to a traffic violation if the officer (1) is on duty exclusively or for the main purpose of enforcing traffic laws, (2) arrests or assists in the arrest of a misdemeanor offender, and (3) is not in a properly marked vehicle and legally distinctive uniform as prescribed by statute. Evid.R. 601(C); R.C. 4549.14; State v. Huth
(1986), 24 Ohio St.3d 114, syllabus.
 {¶ 18} The phrase "on duty for the exclusive or main purpose of" refers to the officer's main purpose for his or her whole period of duty, not to his or her duty during the apprehension and arrest of a particular suspect. Huth at the syllabus. Accordingly, if an officer's main purpose is something other than the enforcement of traffic laws, but the officer arrests a traffic offender anyway, the officer need not be in a properly marked vehicle and legally distinctive uniform to be competent to testify to the arrest. Huth; State v. Butler (1991),77 Ohio App.3d 143, 146; State v. Baum (Jan. 26, 2000), Ross App. No. 99CA2489.
 {¶ 19} The intent of these competency rules is to create uniformity in police work and to prevent speed traps and other similar abuses in the enforcement of traffic laws. See Dayton v. Adams (1967), 9 Ohio St.2d 89;Columbus v. Stump (1974), 41 Ohio App.2d 81; State v. Clark (1983),10 Ohio App.3d 308. Wilson contends that, to further that purpose, in order for an undercover or off-duty officer to be competent to testify he must either wait until the suspected traffic violator stops his vehicle, or call for a marked police car to make the stop. We acknowledge that these factors are relevant to resolving cases where there is some question as to whether the competency rule applies. See, e.g. Clevelandv. Carrie (Sept. 19, 1996), Cuyahoga App. No. 69054 (question as to whether the officer was "on duty" for the main purpose of enforcing traffic laws where officer first encountered intoxicated driver while off duty, and came on duty for the exclusive purpose of detaining the driver); State v. Whitmer (Aug. 16, 1994), Franklin App. No. 94APC03-455 (question as to whether the officer "used" an unmarked vehicle where officer followed the offender in his vehicle and radioed the offender's location to a dispatcher). However, these factors are not dispositive where, as here, the rule by its plain language does not apply.
 {¶ 20} Here, the record contains uncontroverted evidence that Det. Alkire was not on duty for the exclusive or main purpose of enforcing traffic laws when he encountered Wilson. Rather, he was engaged in a burglary investigation at the time. Therefore, by its plain language Evid.R. 601 does not apply to Det. Alkire's encounter with Wilson. Thus, we find that the trial court did not abuse its discretion in ruling that Det. Alkire was competent to testify. Accordingly, we overrule Wilson's first assignment of error.
 III. {¶ 21} In his third assignment of error, Wilson contends that his conviction on the specification that he created a substantial risk of serious physical harm to persons or property is not supported by sufficient evidence, and that his conviction for the underlying offense of fleeing and eluding is contrary to the manifest weight of the evidence.
 A. {¶ 22} When reviewing a conviction to determine if it is supported by sufficient evidence, the appellate court's role "* * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319.
 {¶ 23} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks,61 Ohio St.3d 259 at paragraph one of the syllabus.
Here, the record contains direct and circumstantial evidence that Wilson created a substantial risk of serious physical harm to persons or property when he fled from Det. Alkire. Specifically, the record contains evidence that he drove left of center in curves, in blind curves, and on hills when there was a possibility that oncoming traffic was approaching. He passed Det. Alkire's vehicle over a double yellow line. He drove up to eighty-five miles per hour, and he drove on the berm. He drove in this manner with a passenger in his vehicle, in an area where there were numerous buildings and other types of property located near the road. Upon reviewing this evidence in the light most favorable to the State, we find that a reasonable trier of fact could have found that Wilson created a substantial risk of serious physical harm to persons or property.
 B. {¶ 24} The test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks (1992),78 Ohio App.3d 206, 214; State v. Martin (1983), 20 Ohio App.3d 172,175. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; Martin, 20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Statev. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 25} Wilson asserts that they jury lost its way and created a manifest miscarriage of justice in convicting him for fleeing and eluding because the State did not produce any evidence that he actually heard the siren and ignored it. Additionally, Wilson's passenger, Gillespie, testified that he never heard the siren.
 {¶ 26} R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Evidence that a driver accelerated as officers pursued provides credible evidence of the elements of fleeing and eluding. See State v. Franklin, Cuyahoga App. No. 81426, 2003-Ohio-2649, at ¶¶ 40-41. In addition, intoxication provides evidence that a suspect acted consistently with a motive for fleeing and eluding. See State v.Newsome, Belmont App. No. 02-BE-28, 2003-Ohio-3284, at ¶ 26.
 {¶ 27} Here, the State produced evidence that Det. Alkire activated his siren and lights immediately after Wilson passed him. The siren was no different than the sirens normally used in marked police cars. It was loud enough that a witness, Roger Sampson, heard the siren from inside his house, which sits approximately 150 yards off the roadway. Additionally, Det. Alkire testified, without objection, that immediately after the chase, Gillespie told Det. Alkire he was "absolutely terrified" during the chase. Det. Alkire further testified that each time he caught up to Wilson's vehicle, Wilson sped up and got away from Det. Alkire. Det. Alkire pursued Wilson for approximately four miles, and reached speeds of approximately eighty-five miles per hour. Gillespie testified that the particular route he and Wilson took from the bar to his home was the best route for someone who had been drinking, because they had a lesser chance of encountering a police officer on that route. Finally, the evidence showed that Wilson was intoxicated during the chase.
 {¶ 28} Based upon our review of all the evidence and reasonable inferences that we can draw from it, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must overturn Wilson's conviction for fleeing and eluding and grant a new trial. Specifically, the record contains substantial evidence upon which the jury could conclude that Wilson willfully operated his car to elude Det. Alkire after he heard Det. Alkire's siren and saw his flashing lights.
 {¶ 29} Thus, we find that Wilson's conviction for fleeing and eluding is not contrary to the manifest weight of the evidence, and that sufficient evidence supports Wilson's conviction on the specification that he created a substantial risk of serious physical harm to persons or property as he fled from Det. Alkire. Accordingly, we overrule Wilson's third assignment of error.
 IV. {¶ 30} In his second assignment of error, Wilson contends that the trial court committed plain error when it instructed the jury on the elements of the enhancing specification. Wilson contends that the trial court granted his Crim.R. 29 motion for acquittal on the enhancing specification for serious physical harm to persons, and then prejudicially erred when it nonetheless instructed the jury on the elements of the specification.
 {¶ 31} The State charged Wilson with the specification contained in R.C. 2921.331(C)(5)(a)(ii), which provides that an individual who violates R.C. 2921.331(B) is guilty of a third degree felony if "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." The State did not charge Wilson with the specification contained in R.C.2921.331(C)(5)(a)(i), which applies when "[t]he operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property."
 {¶ 32} When he moved for acquittal, Wilson asserted that the State failed to introduce evidence that his conduct "caused any serious physical harm to anybody, mailboxes, nothing," and that the State failed to prove that he created a substantial risk of physical harm. The court found that the State presented circumstantial evidence that Wilson created a substantial risk of serious physical harm, but that the State presented no evidence that Wilson proximately caused serious physical harm to persons. Therefore the court, apparently under the impression from Wilson that the State charged Wilson with specifications under both R.C.2921.331(C)(5)(a)(i) and R.C. 2921.331(C)(5)(a)(ii), granted Wilson's motion on the R.C. 2921.331(C)(5)(a)(i) specification.
 {¶ 33} The court specifically denied Wilson's motion on the specification related to whether Wilson created a substantial risk of serious physical harm. In its instructions to the jury, the court instructed the jury to determine whether Wilson's operation of his car "was a proximate or a direct cause of a substantial risk of serious physical harm to persons or property." Wilson did not object to the instructions.
 {¶ 34} The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and reach their verdict as fact finder. State v.Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. A defendant who fails to object to jury instructions before the jury retires to deliberate waives any error in the jury instructions. Statev. Williford (1990), 49 Ohio St.3d 247, citing State v. Lane (1976),49 Ohio St.2d 77, paragraph one of the syllabus. "A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection." Crim.R. 30(A).
 {¶ 35} Although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error. Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum
(1990), 53 Ohio St.3d 107, 111. The plain error rule does not require reversal unless, but for the error, the outcome of the trial would clearly have been otherwise. See State v. Underwood (1983),3 Ohio St.3d 12; State v. Long, 53 Ohio St.2d at paragraph two of the syllabus.
 {¶ 36} Here, the specification charged, R.C. 2921.331(C)(5)(a)(ii), requires the jury to determine whether Wilson "created" a substantial risk of harm. Instead, the court instructed the jury to determine whether Wilson "proximately caused" a substantial risk of harm. Wilson did not object. As we found in considering Wilson's third assignment of error, the record contains evidence supporting a finding that Wilson created a substantial risk of harm. Upon review, we cannot say that the outcome of the trial would have been different if the trial court had used the precise language contained in R.C. 2921.331(C)(5)(a)(ii). Thus, Wilson has not shown that the jury instruction amounted to plain error. Accordingly, we overrule Wilson's second assignment of error.
 V. {¶ 37} In his fourth assignment of error, Wilson contends that the trial court erred when it imposed a term of incarceration that exceeded the minimum term of incarceration. Specifically, Wilson contends that his sentence is not consistent with sentences imposed upon similar offenders for similar crimes in this state. Additionally, Wilson contends that increasing his sentence above the minimum available sentence based upon factual determinations made by the judge, rather than by the jury, violates his Sixth Amendment right to a jury trial under Blakely v.Washington (2004), 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403.
 A. {¶ 38} R.C. 2953.08(A)(4) provides that a defendant convicted of a felony may pursue an appeal on the ground that the sentence is contrary to law. The appellate court may modify the sentence upon clearly and convincingly finding that the record does not support the sentence, the sentence erroneously includes a prison term, or the sentence is contrary to law. R.C. 2953.08(G)(1)(a)-(d). In applying this standard of review, we do not substitute our judgment for that of the trial court. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors, (2) made the required findings, (3) relied on substantial evidence in the record supporting those findings, and (4) properly applied the statutory guidelines. State v. Persons
(Apr. 26, 1999), Washington App. No. 98CA17, citing Griffin Katz, Ohio Felony Sentencing Law (1999) 542-547, Section 9.16-9.20.
 {¶ 39} Wilson contends that his sentence is contrary to law because it is not consistent with sentences imposed upon similar offenders for similar crimes in this state, in contravention of R.C. 2929.11(B). He supports his argument by citing two fleeing and eluding cases in which the trial court imposed the minimum one-year sentence.
 {¶ 40} Despite the trial court's invitation for objections at the close of the sentencing hearing, Wilson did not raise an objection that his sentence is not consistent with others. Thus, he waived all but plain error with respect to the argument. Crim.R. 52. "Although a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal." State v. Armstrong, Cuyahoga App. No. 81928, 2003-Ohio-5932 at ¶ 29; see, also, State v. Lathan, Lucas App. No. L-03-1188,2004-Ohio-7074, at ¶ 27.
 {¶ 41} R.C. 2929.11(B) directs trial courts to impose felony sentences that are "consistent with sentences imposed for similar crimes by similar offenders." However, the General Assembly has not identified the means by which the courts should attain this goal. State v. Miniard, Gallia App. No. 04CA1, 2004-Ohio-5352 at ¶ 53, citing State v. McSwain, Cuyahoga App. No. 83394, 2004-Ohio-3292, at ¶ 47. Courts do not have the resources to assemble reliable information about sentencing practices throughout the state. Id., citing State v. Haamid, Cuyahoga App. Nos. 80161 and 80248, 2002-Ohio-3243. "Identification of the data and factors which should be compared in deciding whether a crime or an offender is `similar' in itself would be a massive task, yet the identification of such data would be essential even to begin to build a database. Unless and until someone undertakes this daunting task, `appellate courts will be able to address the principle of consistency only to a very limited degree.'" McSwain at ¶ 47, quoting Haamid, supra; Miniard, supra.
 {¶ 42} An offender cannot demonstrate inconsistency merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his. Lathan at ¶ 24, citing State v.Kingrey, 5th Dist. No. 04-CAA-04029, 2004-Ohio-4605, at ¶ 18 and Statev. Georgakopoulos, 8th Dist. No. 81934, 2003-Ohio-4341, at ¶ 23. "Each case is necessarily, by its nature, different from every other case — just as every person is, by nature, not the same. R.C. 2929.11(B) does not require each judge to sift through every single case that could be deemed similar and impose only a sentence that has been levied before." (Citations omitted). Lathan at ¶ 25. Such a requirement would create a uniform, determinate sentencing structure. "Uniformity is produced * * * where all persons convicted of the same offense with the same number of prior convictions receive identical sentences. Griffin and Katz, Ohio Felony Sentencing Law (2001), 59. Consistency, on the other hand, requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable. Under this meaning of `consistency,' two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment."Georgakopoulos at ¶ 26, quoting State v. Quine, Summit App. No. 20968, 2002-Ohio-6987.
 {¶ 43} Our role as an appellate court evaluating a sentence challenged for consistency likewise does not require us to search through a database of similar and dissimilar cases. Rather, our task is simply to determine whether the record supports the sentence. Lathan at ¶ 27. We need not examine the available data to determine if the trial court has imposed a sentence that is in "lockstep" with others. State v. Ryan, Butler App. No. C-020283, 2003-Ohio-1188, at ¶ 10; Georgakopoulos at ¶ 19. Rather, we merely must determine "whether the sentence is so unusual as to be outside the mainstream of local judicial practice." Id. We decline "to compare a particular defendant's sentences with similar crimes in this or other jurisdictions unless there is an inference of gross disproportionality." State v. Vlahopoulos, Cuyahoga App. No. 80427, 2002-Ohio-3244.
 {¶ 44} Our review of the record here does not demonstrate that the trial court failed to consider the purposes and principles of R.C. 2929.11
et seq. in sentencing Wilson. The two-year sentence imposed by the trial court is at the low end of the one to five year range available for Wilson's offense. The trial court considered the statutory factors, including Wilson's alcohol abuse problem, his history of driving while intoxicated, and history of violating terms of probation imposed upon him for prior offenses. Wilson has not demonstrated that his sentence is grossly disproportionate. Thus, we find that that the record supports Wilson's sentence and that his sentence is not contrary to law.
 B. {¶ 45} Wilson next contends that his sentence violates his Sixth Amendment right to a jury trial because the trial court found that imposing the shortest prison term would demean the seriousness of his conduct and not adequately protect the public from future crime by him or others. Based on these findings, the trial court sentenced Wilson to a two-year prison term, rather than the one-year minimum term. Wilson asserts that this sentence violates Blakely.
 {¶ 46} In Blakely, the defendant challenged the constitutionality of the sentence imposed upon him for second-degree kidnapping under the State of Washington's sentencing scheme. In Washington, second-degree kidnapping is a class B felony, carrying a maximum punishment of ten years imprisonment. Under Washington's sentencing statute, the "standard range" of punishment for second-degree kidnapping is 49 to 53 months. The sentencing statute permits a trial judge to impose a sentence above the standard range if he finds "substantial and compelling reasons justifying an exceptional sentence." One of the aggravating factors justifying imposition of an exceptional sentence is whether the offender acted with "deliberate cruelty." The trial court found that Blakely acted with "deliberate cruelty" in carrying out the kidnapping, and therefore imposed an exceptional sentence of 90 months.
 {¶ 47} Blakely appealed his sentence to the United States Supreme Court, and the Court reversed the trial court's imposition of an exceptional sentence. The Blakely court reaffirmed the rule it articulated in Apprendi, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 124 S.Ct. at 2536, quoting Apprendiv. New Jersey (2000), 530 U.S. 466, 490. The court further held that the "statutory maximum" for Apprendi purposes "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the juryverdict or admitted by the defendant. [Citations omitted.] In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." (Emphasis sic.) Blakely at 2537. Thus, the Blakely Court found that the maximum sentence that the trial judge was permitted to impose for second degree kidnapping was 53 months, not ten years, as the State of Washington had argued. The Court invalidated Blakely's sentence.
 {¶ 48} Here, Wilson urges us to find that Blakely applies to Ohio's sentencing scheme and that Ohio's sentencing scheme, like the State of Washington's, does not comply with the Sixth Amendment. Specifically, he argues that because R.C. 2929.14(B)(2) requires a trial court, rather than a jury, to make certain factual determinations in order to impose a sentence on an offender above the presumptive minimum, it violates the rule in Blakely that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury."Blakely, 124 S.Ct. at 2536. More specifically, Wilson asserts that the factual findings necessary under R.C. 2929.14(B)(2) to impose a sentence above the minimum are the type of "additional facts" that must be submitted to a jury and proved beyond a reasonable doubt. Since that did not occur, Wilson argues that his sentence violates Blakely.
 {¶ 49} The sentencing scheme at issue in Blakely is a determinate system that requires particular sentences in response to particular sets of facts. Blakely 124 S.Ct. at 2540. Blakely is expressly inapplicable to indeterminate sentencing schemes. Id.; State v. Jenkins, Summit App. No. 22008, 2005-Ohio-11, at ¶ 14. As the Blakely court noted, "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. * * * Of course indeterminate schemes involve judicial fact-finding, * * * [b]ut the facts do not pertain to whether the defendant has a legal right to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." Blakely, 124 S.Ct. at 2540.
 {¶ 50} The Court recently reiterated the importance of the determinate/indeterminate distinction when it applied Blakely to the federal sentencing guidelines United States v. Booker (Jan. 12, 2005), Nos. 04-104, 04-105, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d. ___. While invalidating the determinate federal sentencing guidelines, the Booker
Court noted that the guidelines would not implicate Sixth Amendment concerns if they were indeterminate. The Court stated, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."
 {¶ 51} Ohio's sentencing statutes, including R.C. 2929.14(B) "are intended only to structure judicial discretion within an indeterminate sentencing scheme * * *." State v. Berry, Butler App. No. CA2003-02-053,2004-Ohio-6027, at ¶ 40, quoting Griffin and Katz, Ohio Felony Sentencing Law, 482, Section 2.22. The findings that the minimum prison term would demean the seriousness of the offense or not adequately protect the public from future crime by the offender are discretionary factors that are to guide the court in imposing a sentence within the standard statutory range. Jenkins at ¶ 19; Berry at ¶ 46; State v.Eckstein, Hamilton App. No. C-030139, 2004-Ohio-5059, at ¶ 22-25. Thus, we conclude that Apprendi, Blakely, and Booker do not bar an Ohio trial court judge from exercising his traditional sentencing discretion, in which the judge necessarily considers the facts of the underlying offense in making the determinations required under R.C. 2929.14(B).
 {¶ 52} Because we find that the trial court did not violate Wilson's Sixth Amendment right to a jury trial by sentencing him to greater than the minimum term of imprisonment available, we overrule Wilson's fourth assignment of error.
 {¶ 53} Having overruled each of Wilson's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.