DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence for murder and felonious assault with a firearm issued by the Lucas County Court of Common Pleas following a jury trial. Because we conclude that the trial court erred in failing to merge alternative offenses at sentencing, we reverse that portion of the sentencing judgment. In all other respects, for the reasons that follow, the judgment of the trial court is affirmed.
 {¶ 2} Mills Kemper's father died on the morning of October 24, 2002. That afternoon, Kemper met his nephews, Gary Clark and Jimmy Miller, at a south Toledo bar. Kemper's girlfriend, Tricia Scott, was also present. According to Kemper, the four began drinking at approximately 2:00 p.m.
 {¶ 3} At about 6:00 p.m., Kemper, Scott, Clark and Miller went to an east Toledo bar, the Rider's Edge, where Miller was scheduled to participate in a pool tournament. While Miller shot pool, Kemper, Clark and Scott continued drinking.
 {¶ 4} The record is not clear as to the behavior which prompted it, but witnesses agreed that, at the conclusion of the pool tournament, the bartender at the Rider's Edge refused to continue serving the Kemper party. After a heated discussion, the bartender asked the four to leave. As they were leaving, Bruce Hicks, later described by the bar's owner as the bartender's boyfriend, shoved Mills Kemper to the floor.
 {¶ 5} After leaving the Rider's Edge, the four went to the home of Gary Clark's sister, where they discussed the event. Appellant, Robert Wymer, was present during this discussion.
 {¶ 6} According to Miller's later testimony, at some point he realized he had lost his cell phone and believed it might be in the parking lot at the Rider's Edge. Shortly thereafter, Kemper, Clark and Miller returned to the Rider's Edge, accordingly to their testimony, to retrieve Miller's phone. Appellant, apparently, also went there in a separate vehicle. There is some question as to whether appellant was accompanied by two or more African-Americans.
 {¶ 7} Patrons of the Rider's Edge testified that they saw Kemper return to the bar in the apparent company of at least two African-Americans who positioned themselves with their backs to the bar, facing the customers. According to the bar's owner, the African-Americans appeared threatening. One of them advised her not to call 9-1-1. Clark and appellant, according to witness testimony, remained on the sidewalk in front of the bar. Miller testified that he went to the parking lot to find his cell phone.
 {¶ 8} Inside the bar, Kemper and Bruce Hicks spoke, a conversation that witnesses said ended in a handshake. Kemper left, but as the African-Americans began to leave, a scuffle broke out. One of the bar patrons later testified that as the African-Americans eventually exited the door, he saw a white male with a red bandana on his head on the sidewalk outside. The witness said he saw the man had a gun which he was raising as the door closed. He then observed a number of shots come through the door. One of these shots struck Bruce Hicks. Another hit the team captain of Jimmy Miller's pool team, Tim Conkright.
 {¶ 9} Kemper and Clark testified that outside, as they were walking away from the bar, they heard a series of shots. Both testified that when the shots began they turned to see appellant in a shooting stance directed toward the front door of the bar. Clark said he observed muzzle flashes. Neither Kemper nor Clark saw a gun, but both testified that appellant was wearing a red bandana.
 {¶ 10} Bruce Hicks died from a single gunshot wound from a 9 mm projectile fired through the door. Tim Conkright sustained serious injury. The remaining five slugs were found embedded in a rear wall.
 {¶ 11} Appellant was indicted for one count of murder, pursuant to R.C. 2903.02(A), a second count of felony murder, pursuant to R.C.2903.02(B), and a single count of felonious assault in violation of R.C.2903.11(A)(2). Each count contained a firearm specification. On March 31, 2003, following trial, a jury found appellant guilty as charged. The trial court entered judgment on the verdict and sentenced appellant to two concurrent terms of incarceration of fifteen years to life for the murder and felony murder charges and ordered these terms to be served consecutive to a six year term for felonious assault and three concurrent terms of three years for the gun specifications. From this judgment of conviction and sentencing, appellant now brings this appeal, setting forth the following seven assignments of error:
 {¶ 12} "Assignment of error number one
 {¶ 13} The court erred in not instructing the jury on the lesser included offense of involuntary manslaughter and trial counsel was ineffective in failing to request an instruction to the jury regarding the lesser included offense of involuntary manslaughter.
 {¶ 14} "Assignment of error number two
 {¶ 15} The trial court erred to the prejudice of Mr. Wymer by denying the motion for acquittal presented by the defense at the conclusion of the trial.
 {¶ 16} "Assignment of error number three
 {¶ 17} The trial court erred to the prejudice of Mr. Wymer when it sentenced him to consecutive sentences based on facts not found by the jury or admitted by appellant.
 {¶ 18} "Assignment of error number four
 {¶ 19} The trial court erred to the prejudice of Mr. Wymer by failing to merge counts 1-A and 1-B and further erred by imposing concurrent sentences on each of these counts.
 {¶ 20} "Assignment of error number five
 {¶ 21} Insofar as any of the errors complained of herein are deemed not to have been preserved properly by trial counsel, appellant was denied the effective assistance of counsel to which he is constitutionally entitled.
 {¶ 22} "Assignment of error number six
 {¶ 23} Even if the assigned errors viewed individually are determined to be harmless, their cumulative effect can be prejudicial.
 {¶ 24} "Assignment of error number seven
 {¶ 25} A trial court errs and a criminal defendant is denied due process of law under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where it fails to determine if a criminal defendant's failure to testify is the result of his own decision."
 LESSER OFFENSE INSTRUCTION {¶ 26} In his first assignment of error, appellant insists that in addition to the jury charge on murder the trial court should have instructed the jury on the inferior degree offense of voluntary manslaughter.[1] Moreover, appellant maintains, his trial counsel's failure to request such an instruction constituted ineffective assistance of counsel. Appellant has a formidable burden to meet to prevail on this assignment of error.
 {¶ 27} A defendant's failure to request a jury instruction or object to its omission normally waives error associated with the instruction absent plain error. State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. Only errors affecting substantial rights constitute plain error. Crim.R. 52(B). The term has been more specifically judicially defined as an error which, "* * * seriously affects the fairness or integrity of the trial * * *," State v. Long (1978), 53 Ohio St.2d 91, 95, quoting United States v. Beasley (C.A. 5, 1975), 519 F.2d 233, 238, or, more directly, an error without which, "* * * the outcome of the trial clearly would have been otherwise." State v. Cunningham,
___ Ohio St.3d ___, ___, 2004-Ohio-7007, at ¶ 53.
 {¶ 28} If the trial court's failure to instruct on the inferior offense does not constitute plain error, appellant must show that trial counsel's failure to request the instruction was an error so egregious that counsel was not functioning as the "counsel" guaranteed by theSixth Amendment and that this deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. Accord State v.Smith (1985), 17 Ohio St.3d 98, 100. Counsel's actions which "might be considered sound trial strategy" are presumed effective, Strickland,
supra, and "prejudice" exists only when there exists a reasonable probability that the outcome of the trial would have been different but for counsel's deficiencies. Id. at 694. See, also, State v. Lott (1990),51 Ohio St.3d 160.
 {¶ 29} A charge of a lesser included or an inferior offense is required only when there is evidence presented at trial by which a jury could reasonably acquit the defendant for the principal crime charged, yet convict on the lesser offense. State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 30} Murder, as charged here, is either "purposely caus[ing] the death of another," R.C. 2903.02(A), or causing the death of another while committing a violent offense which is a first or second degree felony. R.C. 2903.02(B). For a homicide to constitute voluntary manslaughter, the offender must have knowingly caused the death of another, "* * * while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [offender] into using deadly force * * *." R.C. 2903.03.
 {¶ 31} Voluntary manslaughter is an inferior offense to murder. Statev. Tyler (1990), 50 Ohio St.3d 24, 36. We do not, however, see its applicability to the evidence presented at trial here. There was no evidence presented that appellant ever entered the Rider's Edge bar or had any interaction with any of the patrons therein. Absent some contact with someone, it is difficult to conceive of how one may have been reasonably provoked to sudden passion or rage. Consequently, appellant would not have been entitled to a voluntary manslaughter instruction, even had his trial counsel requested it. Moreover, it is clear from viewing the trial as a whole that the defense strategy was to attack the identification of appellant as the shooter. Trial counsel might have reasonably concluded that a request for an instruction on an inferior offense might be antithetical to this defense.
 {¶ 32} Accordingly, appellant's first assignment of error is not well-taken.
 MOTION FOR ACQUITTAL {¶ 33} At the close of the state's case in chief and at the end of the trial, appellant moved for and was denied a judgment of acquittal, pursuant to Crim.R. 29. In his second assignment of error, appellant contends that there was insufficient evidence to support his conviction and that the verdict was against the manifest weight of the evidence.
 {¶ 34} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).
 {¶ 35} In determining whether the evidence submitted at trial is legally sufficient to support all of the elements of the offense charged, a reviewing court must ascertain whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring); see, also, State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 36} A manifest weight question is technically different from a Crim.R. 29 or a sufficiency of the evidence issue. When it is asserted that a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned. Thompkins at 387.
 {¶ 37} Appellant concedes that there was evidence supporting all of the elements of the offenses for which he was convicted except his identity as the shooter. It is as likely, appellant insists, that one of the African-Americans exiting the bar just before the shooting was the shooter. No one actually identified appellant with a gun in his hand. The patron inside the bar could not identify appellant as the man he saw with a red bandana and a gun in his hand. Kemper and Clark testified only that they saw appellant in a shooting stance outside the bar. Neither testified to seeing a gun in his hands.
 {¶ 38} While there was no direct evidence of a gun in appellant's hands outside the Rider's Edge, there was ample circumstantial evidence that he was the shooter. The bar patron testified that he saw a white male with a red bandana on his head with a gun just before the firing began. Kemper and Clark both testified that as they were walking away from the bar they heard gun shots and turned to see appellant in a shooting stance aimed at the bar's front door. Both witnesses also testified that appellant was wearing a red head scarf at the time. Moreover, there was other testimony that appellant later stated that he had "shot up a bar." This is sufficient evidence from which a reasonable juror could conclude beyond a reasonable doubt that appellant was indeed the shooter in this case.
 {¶ 39} Additionally, after careful examination of the record in this matter, we find nothing to suggest that the jury lost its way or that a manifest miscarriage of justice occurred. Accordingly, appellant's second assignment of error is not well-taken.
 BLAKELY QUESTION {¶ 40} Appellant, in his third assignment of error, suggests that the imposition of consecutive sentences in his case violates his constitutional right to be sentenced only on essential facts found by a jury as articulated in Blakely v. Washington (2004), 524 U.S. ___,124 S.Ct. 2531.
 {¶ 41} This court has considered Blakely with respect to Ohio's sentencing scheme and found it inapplicable. State v. Curlis, 6th Dist. No. WD-04-032, 2005-Ohio-1217, at ¶ 18. Accordingly, appellant's third assignment of error is not well-taken.
 MERGER {¶ 42} Appellant was indicted, pursuant to R.C. 2941.25, for both murder (R.C. 2903.02(A)) and felony murder (R.C. 2903.02(B)) for the death of Bruce Hicks. The jury found appellant guilty of both counts. All parties agreed that these two counts constituted alternative offenses for the same behavior and should be merged.
 {¶ 43} At sentencing, the court ordered the offenses merged, but then ordered that the sentences for the two offenses be served concurrently. In his fourth assignment of error, appellant asserts that ordering concurrent sentences for counts which should have been merged was erroneous and prejudicial to him. Appellee concedes this point. See Statev. Crowley, 151 Ohio App.3d 249, 255, 2002-Ohio-7366, at ¶ 34; Statev. McSwain, 8th Dist. No. 83394, 2004-Ohio-3292, at ¶ 49-51.
 {¶ 44} Accordingly, appellant's fourth assignment of error is well-taken.
 PRESERVATION OF ERROR {¶ 45} In his fifth and sixth assignments of error, appellant posits that trial counsel was ineffective in failing to raise any errors found not properly preserved and that any errors deemed harmless were cumulatively prejudicial. Since we have found no errors not properly preserved and deemed no errors harmless, we need not address these assignments, which are found moot.
 TESTIMONIAL WAIVER {¶ 46} In his remaining assignment of error, appellant suggests that the trial court should have conducted an on record colloquy with him to determine whether his election not to testify was knowing and intelligent. Appellant states that he recognizes that the Supreme Court of Ohio has rejected this argument, State v. Campbell (2000),90 Ohio St.3d 320, 326, but raises the question to preserve the issue for later review. Campbell remains good law. Accordingly, appellant's seventh assignment of error is not welltaken.
 {¶ 47} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to said court for resentencing in conformity with this decision. Costs to appellee pursuant to App.R. 24.
Judgment Affirmed, in part, and Reversed, in part. A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J. concur.
[1] In his reply brief, appellant concedes that his use of the offense "involuntary" manslaughter in his assignment of error was a "typographical error."