DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of assault on a peace officer in violation of R.C. 2903.13(A) and (C)(3). For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth two assignments of error:
 {¶ 3} "I. The jury verdict was against the manifest weight of the evidence because the evidence demonstrated that the appellant did not cause or attempt to cause harm to the police officers.
 {¶ 4} "II. The trial court failed to instruct the jury on the affirmative defense of self-defense."
 {¶ 5} On July 19, 2002, appellant was indicted on one count of assault on a peace officer in violation of R.C. 2903.13(A) and (C)(3). Appellant entered a plea of not guilty and the matter was tried before a jury on October 24 and 25, 2002. The jury returned a verdict of guilty on October 25, 2002. The case was set for sentencing on December 16, 2002, and bond was ordered continued. On November 22, 2002, a capias was issued on the request of appellant's probation officer, who stated that appellant had failed to report for his presentence investigation as required and that he had been unable to contact appellant. The capias remained in effect and eventually the matter was referred to the clerk of courts for commencement of bond forfeiture proceedings. The matter was set several times for a bond forfeiture hearing; notices sent to appellant's home were refused. On July 2, 2003, the trial court ordered appellant's bond forfeited. On November 23, 2004, appellant was arrested and taken into custody. On December 8, 2004, appellant appeared before the trial court for sentencing and was ordered to served a term of 17 months in prison. Appellant now appeals from his judgment of conviction.
 {¶ 6} As his first assignment of error, appellant states that the jury's verdict was against the weight of the evidence. The Supreme Court of Ohio has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence. "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997),78 Ohio St.3d 380 at 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172 at 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Martin at 175 .
 {¶ 7} R.C. 2903.13(A) and (C)(3) provide:
 {¶ 8} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 9} "* * *
 {¶ 10} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C) (1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
 {¶ 11} "(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 12} The jury in this case heard the testimony of the arresting officers, appellant's girlfriend, appellant, and several other individuals.
 {¶ 13} In the early morning hours of June 2, 2002, Officers Charles Williams and Robert Tolles of the University of Toledo Police Department initiated a traffic stop in an attempt to assist a woman who said she had left her car keys in her boyfriend's car after they had an argument. Officer Williams testified that the woman identified appellant's car as her boyfriend's automobile when she saw it at an intersection near the university. The officers decided to stop appellant and question him. Williams stated that the woman then told him she was mistaken, but by that time Officer Tolles had approached appellant's car. Officer Tolles testified that as he pulled over, appellant got out of his car and walked toward the cruiser. Tolles ordered him back into his car and appellant became verbally belligerent. After being told several times, appellant sat in his car, leaving the door open and one leg outside. Tolles became concerned when appellant put his right hand into his pocket and refused to take his hand out when asked. When Tolles reached into the car and put his hand on appellant's, appellant began to struggle. Officer Williams approached to assist and appellant continued to struggle as the officers tried to remove him from his car. Tolles testified that before appellant was handcuffed, all three men fell to the ground and appellant kicked him several times.
 {¶ 14} Officer Williams testified that after the stop he noticed Tolles was having a "physical altercation" with appellant and approached to help. Williams was told appellant was trying to remove something from his pants pocket. Williams heard Tolles tell appellant to remove his hand from his pocket and appellant refused. He also heard Tolles tell appellant to step out of the car. Williams testified he noticed Tolles was holding appellant's right wrist. Williams then grabbed appellant's left arm to lift him out of the car. Appellant resisted and fought, kicking both of them, but they were able to remove him from the car. During the course of the struggle, the officers and appellant fell into the car and then onto the ground. Both officers used mace several times, and then were able to gain control of appellant. Williams testified he asked for the Toledo Fire Department to respond to treat any injuries. Appellant refused medical treatment. Officer Williams testified he received bruises as a result of the struggle.
 {¶ 15} Officer James Grothaus, also with the University of Toledo Police Department, testified he responded to the scene and saw appellant on the ground as the officers tried to handcuff him. He heard appellant shouting obscenities and verbal threats. Grothaus testified he saw appellant kick Officer Williams in the back.
 {¶ 16} James Babka, a lieutenant with the Toledo Fire Department, testified that when he responded to the scene appellant was handcuffed. Appellant was combative and uncooperative and refused medical treatment. He stated appellant had no noticeable injuries.
 {¶ 17} Irledy Mysinger, appellant's girlfriend, testified she met appellant in a parking lot after she finished work that night. They sat in appellant's car and quarreled. She then got out to go home, accidentally leaving her keys behind. Mysinger testified that by the time she realized she had no keys, appellant had driven away, so she decided to walk to his house. As she was walking, Officer Williams stopped her and asked if she was all right. She explained where she was going and accepted his offer of a ride. Mysinger testified that as they drove she spotted what appeared to be appellant's car. Williams radioed Tolles, who pulled appellant over to see if he had Mysinger's keys. At that point, Mysinger told Williams they had stopped the wrong car and that she did not know appellant. She testified she then saw Tolles grab appellant and "throw him out of the car." Mysinger testified that appellant did not try to hit the officers. Mysinger testified that she told Officer Williams she did not know appellant because she "did not trust [the officer]."
 {¶ 18} Appellant testified that when Officer Tolles signaled him to pull over, he parked his car, got out and walked toward the cruiser. He stated that when the officer told him to get back in his car he did so immediately. Appellant further testified that when he reached into his pocket for his driver's license, Tolles "got all paranoid" and struck him with his night stick, sprayed him with mace, dragged him out of the car, hit him continuously with the night stick, and sprayed him with mace several more times. Appellant denied doing anything other than try to protect himself.
 {¶ 19} Officer Tolles testified further that the University of Toledo Police Department does not issue nightsticks and stated he did not have one.
 {¶ 20} This court has reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses. We are unable to find that the jury clearly lost its way in resolving conflicts in evidence and created such a manifest miscarriage of justice that appellant's conviction must be reversed. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 21} In his second assignment of error, appellant asserts the trial court erred by failing to instruct the jury on self-defense. This argument fails for several reasons. First, we note that appellant attempts to support his argument with case law regarding the giving of jury instructions for a lesser included offense, which is totally inapplicable in this case. Second, trial counsel did not request a jury instruction on the affirmative defense of self-defense, thereby effectively waiving any error on that issue. This court has held that "[a] defendant's failure to request a jury instruction or object to its omission normally waives error associated with the instruction absent plain error." State v. Wymer, 6th Dist. No. L-03-1125, 2005-Ohio-1775 at ¶ 27, citing State v. Underwood (1983), 3 Ohio St.3d 12, at syllabus. Further, only errors affecting substantial rights constitute plain error. Crim.R. 52(B). Plain error has been defined as an error without which the outcome of the trial clearly would have been otherwise. Statev. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 53. The facts of this case, as summarized above, clearly do not support a finding that the outcome of appellant's trial would have been otherwise had an instruction on self-defense been given. Accordingly, the failure to instruct the jury on self-defense did not constitute plain error. Based on the foregoing, we find appellant's second assignment of error not well-taken.
 {¶ 22} On consideration whereof, this court finds appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.