DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which found appellant guilty of one count of murder in violation of R.C. 2903.02(A) and one count of illegal possession of a firearm, in violation of R.C. 2923.13
(A)(3). For the reasons set forth below, this court affirms the judgment of the trial court.
 {¶ 2} On appeal, appellant sets forth the following sole assignment of error:
 {¶ 3} 1. "Appellant's conviction for murder is against the sufficiency and manifest weight of the evidence presented."
 {¶ 4} The following undisputed facts are relevant to the issue raised on appeal. On November 16, 2003, a series of events transpired which culminated in the murder of Kenny Young. All involved parties and witnesses were acquainted with one another. They all resided in the same neighborhood in central Toledo.
 {¶ 5} On November 16, 2003, Young had a verbal confrontation with Marc Long. Young was irate about Long's use of Young's driveway to conduct illegal drug sales activity. Young demanded that Long immediately cease using his driveway to conduct his drug sales. Young told Long that his actions were disrespectful to Young. Long left the premises. Long conceded in his testimony that his selling drugs from Young's driveway precipitated the verbal altercation. Long felt the matter was concluded.
 {¶ 6} Appellant, Long's uncle, subsequently became aware of the confrontation between Long and Young. Appellant became upset despite Long reassuring him that the matter was settled and "we will be cool." Despite Long's approach in treating the matter as concluded, appellant decided to retaliate. Young's live-in-girlfriend, Tina Everrett-Johnson, and her daughter were inside the duplex she shared with Young on the day of the dispute. Everrett-Johnson was cleaning the apartment. Young was outside of the duplex. Everrett-Johnson heard appellant approach Young and verbally berate him. Everrett-Johnson then peeked out of the window, observed appellant pull out a firearm, aim at Young, and fire several shots into Young. Young was killed instantly.
 {¶ 7} Appellant was indicted on one count of murder, in violation of R.C. 2903.02(A), and one count of illegal possession of a firearm in violation of R.C. 2923.13(A)(3). On July 11, 2005, appellant's case proceeded to jury trial. Appellant was found guilty on both counts. Appellant was sentenced to consecutive terms of 15 years to life and five years. A timely notice of appeal was filed.
 {¶ 8} Appellant raises a single assignment of error on appeal. Appellant contends his murder conviction was against the sufficiency of the evidence and against the manifest weight of the evidence presented at trial.
 {¶ 9} The Supreme Court of Ohio has defined the proper standard of appellate review in analyzing a challenge of a criminal conviction arising from allegations that the conviction was not supported by the "sufficiency of the evidence." The reviewing court must determine whether the evidence submitted was legally sufficient to support the elements of the crime. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
 {¶ 10} The reviewing court must conclude whether a rationale trier of fact could have found the elements of the crime proven beyond a reasonable doubt viewing the evidence in the light most favorable to the prosecution. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. As we have uniformly held, the trier of fact is properly vested with the discretion to weigh and evaluate the credibility of conflicting testimony and evidence in reaching its determination. It is not within the proper scope of this court's responsibility to determine witness credibility. State v. Hill, 6th Dist. No. OT-04-035,2005-Ohio-5028 at ¶ 42.
 {¶ 11} In conjunction with contesting the sufficiency of the evidence, appellant asserts the murder conviction was against the manifest weight of the evidence. Our standard of review on assertions that a conviction was against the manifest weight of the evidence is to determine whether the jury clearly lost its way so as to create a manifest miscarriage of justice and warrant reversal of the conviction. State v. Walach, 6th Dist. No. L-05-1008, 2005-Ohio-5456 at ¶ 6. In order to reach this conclusion, we act as a "thirteenth juror" to conclude whether the factfinder clearly lost its way so as to necessitate the conviction be overturned and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 12} We have thoroughly reviewed and considered the record in this matter. Long, appellant's nephew whose actions triggered these events, does not deny having a verbal altercation with the victim. Long does not deny the victim was angry from Long using his property to conduct illegal drug business. Long's testimony verified that appellant, Long's uncle, approached and confronted Young about the incident. Long testified appellant advised Long, "you have a problem with them * * * you let Unc know and Unc going to take care of it." Long testified that appellant then showed him his 9 millimeter gun. The investigating criminologist from the Toledo Police Department definitively determined Young was shot dead with a 9 millimeter weapon.
 {¶ 13} The prosecution's primary witness was Everrett-Johnson, the decedent's live-in-girlfriend. Everett-Johnson was inside their apartment at the time Young was shot to death. Everrett-Johnson testified that she heard the verbal altercation going on in the driveway between appellant and Young. Everrett-Johnson went to the window to see what was happening. While looking out the window, Everrett-Johnson observed appellant pull out a firearm, shoot Young at point blank range, and kill him.
 {¶ 14} Appellant relies heavily upon the fact that Everrett-Johnson did not immediately name him as the shooter in support of the legitimacy of his appeal. Everrett-Johnson explained that her delay in coming forward was precipitated by her fear for the safety of herself and her young daughter if she disclosed the shooter's identity. Everett-Johnson testified, "I was scared for me and my daughter's life." Another witness who resides in the neighborhood was walking on Young's street around the time Young was murdered. This witness, who was familiar with all involved parties, observed a vehicle driving away from the vicinity of Young's duplex around the time of the murder that matched appellant's vehicle.
 {¶ 15} In sharp contrast to the substantial amount of evidence presented indicating appellant's guilt, appellant's primary defense witness was his girlfriend, Heather Lestock. Lestock was purported to be the key alibi witness for appellant. Lestock testified, in direct contradiction to the testimony of a multitude of prosecution witnesses, that appellant was with her for several hours at a Toledo area restaurant during the timeframe in which Young was murdered. No independently verifiable evidence was presented to collaborate the alibi testimony of Lestock. A second alibi witness, appellant's sister, was unsuccessfully offered. Clairene Williams took the stand on behalf of her brother but was quickly forced to concede she did not have knowledge of his whereabouts at the time the murder occurred.
 {¶ 16} The record reveals ample testimony from which a rational trier of fact could find the elements of murder proven beyond a reasonable doubt. There is nothing in the record suggesting the jury lost its way so as to cause a manifest miscarriage of justice. Appellant's assignment of error is not well-taken.
 {¶ 17} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerks' expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J. Singer, P.J. Parish, J. concur.