THE STATE OF OHIO, APPELLEE, *v.* ALLSUP, APPELLANT.

[Cite as State v. Allsup (1980), 67 Ohio App. 2d 131.]

(No. 10-79-7—Decided February 20, 1980.)

*Mr. Henry J. Knapke, Jr.,* prosecuting attorney, and *Mr. Jeffrey R. Ingraham,* for appellee.

*Mr. Peter Denger, Messrs. Walters, Young & Walters* and *Mr. Robert C. Young,* for appellant.

COLE, J.  This is an appeal from a judgment of conviction and sentence by the Court of Common Pleas of Mercer County of the defendant-appellant, Walter Allsup, for the crime of arson in violation of R. C. 2909.03(A)(4). The defendant now appeals asserting a single assignment of error, *i.e.,* that the trial court erred in denying defendant's motion for acquittal made at the end of the state's case. It appears that this was a jury trial, that the defendant then proceeded, after his motion was overruled, to present his case and that he thereby waived the error as alleged. Moreover, the motion was not thereafter renewed. The error then, if any, was waived. See *Dayton* v. *Rogers* (1979), 60 Ohio St. 2d 162. However, at oral argument it appeared, and from the briefs it is clear, that both parties were arguing about the ultimate sufficiency of the evidence to sustain a verdict of guilty. Both parties at oral argument

agreed that this, rather than the limited asserted error, was the issue and we shall so regard it.

The issue, therefore, is the sufficiency of all the evidence to sustain the conviction.

This issue, in turn, is quite narrow. The appellant was charged with the crime of arson. It is clear that he did not personally light any fires. The actual arson was committed by two other individuals both of whom testified. The chief perpetrator of the actual burning was one Ervin D. Piatt, who employed and assisted one Dennis Houser, in setting the blaze.

Piatt testified that he was acting for, and under the direction of, the defendant. Piatt was, therefore, an accomplice; and, the sole issue becomes the application of R. C. 2923.03(D), which reads as follows:

"No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence."

The application and interpretation of this statute has been twice before the Supreme Court of Ohio. In *State* v. *Myers* (1978), 53 Ohio St. 2d 74, 75, in a *per curiam* decision the court stated that "***it is vitally important that one implicating an accomplice do something more than point a finger. His testimony must be corroborated by some other fact, circumstance, or testimony which also points to the identity of the one he accuses as a guilty actor.***"

In a footnote in the *Myers* case, *supra,* at page 75, the court indicated that there was not any corroborating evidence, and, hence, "***we need not determine how much corroboration is sufficient.***"

In the more recent case of *State* v. *Vorys* (1978), 56 Ohio St. 2d 107, the court determined, after reiterating the basic rule above, that where there are multiple accomplices, the testimony of one accomplice may corroborate sufficiently the testimony of another accomplice at the trial of a third accomplice.

As the *Myers* opinion indicates, there is no definitive examination of the extent of "supporting" evidence required. In the *Myers* case, the issue of the identity of the defendant was the principal point in question, since there was adequate evidence of the crime and that it was committed by several

people; but, only the testimony of an accomplice indicated that the defendant was involved.

Here, the issue involves not the identity of one among several co-perpetrators involved in the actual commission of a crime, but something more related to the question of the identity of an undisclosed or concealed principal by an agent. There is ample evidence to establish that Houser and Piatt committed arson in setting fire to a residence owned by the defendant. They testify fully to the commission of the crime, and this testimony is bolstered by the testimony of the arson investigator. However, Houser did not testify concerning the relationship of the defendant to the event; so the principle of *Forbes* v. *State* (Tex. Crim. App. 1974), 513 S.W. 2d 72, certiorari denied (1975), 420 U. S. 910, as to the issue of the defendant's participation, as established by the *Vorys* case, *supra,* is not directly applicable although Houser's testimony can serve to corroborate that of Piatt on the actual circumstances involved in the commission of the offense and the circumstances of Piatt's employment.

The nexus which connects the actual crime with the defendant is most clearly established by the testimony of Piatt, who testified, in effect, that he was requested by the defendant to burn the defendant's home while the defendant was away to thereby obtain the insurance proceeds on the house. Piatt testified, as to a conversation with the defendant, as follows:

"Well, I said he had a nice looking Ponderosa, that's what he always called his Ponderosa, and I said I guess you're getting quite a bit of money tied up in this and he said, yeh [*sic*], it would be worth a lot more going up in smoke than it would be standing there.***"

Later, at a second conversation at a tavern, Piatt testified as follows:

"A. He asked me if I would do it and I told him no. I said I might get you somebody to do it.

"Q. He asked you if you would do what?

"A. Would burn his house.***"

Subsequently, a week before the burning, a further conversation allegedly took place. Piatt states that he told the defendant he had found someone, as indicated by the following testimony:

"A. Well, he said, okay then.

"Q. And was any amount of money discussed between you and Walter to be paid to any one?

"A. I told him Charlie was going to do it for $500.00. * * *"

Again, referring back to the first conversation, Piatt testified as follows:

"Q. During your first conversation with Walter Allsup, at Walter Allsup's residence some three or four weeks prior to the actual fire itself, did Walter Allsup tell you why he wanted his trailer burned?

"A. Most ceratinly [sic] did.

"Q. And what did he tell you?

"A. For insurance, the insurance of either twenty-two or thirty-two thousand dollars.

"Q. He mentioned an amount of insurance?

"A. Yes, but I am not sure which one it was."

Finally, as to the day prior to the fire, Piatt testified as follows:

"A. Well, he called, said he was going to Iowa and he wouldn't be back until Monday and if everything was set and I said yes, and he said Charlie and I said, yes, and that's about all there was to it. No more. Said I'll see you then and hung up."

Thereafter, on the day following the fire, defendant and Piatt again met; Piatt testified as follows:

"A. He wanted to know who I got to do it or you know who done it. I told him well.

"* * *

"A. Well, [he] asked me why I got a dumb * * * like that to do it."

The above testimony, together with other incidental testimony, would, if true, fully implicate the defendant as an associate in the criminal enterprise. However, we are faced with the application of the statutory limitation that the testimony of the accomplice cannot be the sole basis for conviction. It must be supported. Here there was no third party present at any of the pertinent conversations noted above. If "corroboration" or "supporting evidence" means that the testimony of another witness is required concerning these verbal arrangements, such corroboration cannot be supplied, nor was it possible from the testimony of Piatt. He explicitly detailed the absence of any witnesses at any of these conversations. Such,

however, is the nature of most criminal conspiracies. The principals normally cloak their arrangements in secret and shadow. We do not believe, though, that the supporting evidence need necessarily invade these secret meetings. Corroboration is discussed at 56 Ohio Jurisprudence 2d 833-834, Witnesses, Section 399, wherein it is stated that:

"Very slight circumstances may constitute corroborating evidence. Generally speaking, any fact which tends to support the testimony given by a witness directly, or to remove an imputation against his veracity, may be shown. To be corroborative, however, the testimony submitted must relate to or be connected in some material way with the fact testified to by the witness whose testimony is being substantiated.\*\*\*"

In *State* v. *Robinson* (1910), 83 Ohio St. 136, 143, the question of corroboration in an incest case was discussed by the Supreme Court and it was therein stated that:

"\*\*\*It is not necessary that the crime charged be proven independently of the testimony of the accomplice, or that the testimony of the accomplice be corroborated in every particular in order that it may be said to be corroborated, but only that there be circumstantial evidence, or testimony of some witness other than the accomplice, tending to connect the defendant with the crime charged and to prove some of the material facts testified to by the accomplice.\*\*\*"

In *State* v. *Myers, supra,* at pages 75-76, as *obiter dictum* in a footnote, the court stated the following:

"\*\*\*However, where other states have required, by statute or judicial decision, corroboration of accomplice testimony, the test has generally been " ' "to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence\*\*\*which tends to connect the defendant with the commission of the offense." ' " *Forbes* v. *State* (Tex. Crim. App. 1974), 513 S.W. 2d 72, 76, certiorari denied, 420 U. S. 910."

Reviewing and condensing these various statements, it can be concluded that what is basically required is some evidence, independent of the statement by the accomplice, that " 'tends to connect the defendant' " (*Forbes, supra,* at page 76) with the crime charged. It would appear that this "other evidence" need not be necessarily of sufficient strength

to, by itself, constitute proof beyond a reasonable doubt, but must directly, or by reasonable inference, connect the defendant with the crime.

Here, the crime is one of arson; and, the defendant, even in the statement of events of the accomplice Piatt, was not an active participant in the actual act of setting fire to the defendant's house. Defendant was, according to Piatt and according to his own testimony, on the day of the fire, out of the state. Defendant's nexus with the crime was, as alleged by Piatt, that of being the instigator, the employer, as it were, who sought to have his house burned, to thereby obtain the insurance proceeds. Was there independent evidence as to this nexus?

A material fact is the ownership by the defendant of the house and that it was insured, as was testified to by Piatt. This is established by other evidence.

A material fact is the incendiary nature of the fire. This is established by the testimony of both Houser and the arson investigator.

A material fact is the long-time acquaintanceship of Piatt and the defendant. This is established by admissions of the defendant and the testimony of Mrs. Piatt.

A material issue is the existence of meetings and communications between Piatt and the defendant. Mrs. Piatt testified concerning a phone call for her husband, but not as to the identity of the caller on the evening before the fire. The defendant, however, admits calling Piatt, but does not admit the contents of the conversation.

It is also material that on the evidence presented, the only one profiting by the crime was the defendant.

A material fact is the existence of a conversation between Piatt and the defendant the day after the fire. That a conversation occurred is testified to by Mrs. Piatt.

Finally, at a time after the fire and after the defendant had loaned Piatt or his wife $1,500 for bail, a conversation occurred, as testified to by Mrs. Piatt, between the defendant and Piatt in which the defendant said:

"A. He [the defendant] says, yes, give Stub Houser $500.00 and you give me back the thousand that you owe me.

"Q. Did your husband reply to this?

"A. He says, no, it was your place to give Stub Houser the $500.00."

This conversation would tend to indicate that the defendant told Piatt to pay Houser from money otherwise owed to defendant, *i.e.,* $500, which was the exact agreed price that Houser was to get for his participation.

We conclude that these facts, taken together, not only support facts testified to by Piatt and thus fortify his credibility, but also support the linkage of the defendant with the arson. Taken together, they lead to basic inferences which, if not sufficient to themselves to establish guilt beyond a reasonable doubt, are, however, sufficient to lead to substantial belief in the complicity of the defendant.

Therefore, the nexus between the defendant and the arson, as established by evidence independent of Piatt's testimony, consisted of the following:

(1) Ownership of the burned structure.

(2) A sizeable financial interest in the proceeds from an existing insurance policy.

(3) A long-time acquaintance with Piatt.

(4) A telephone conversation with Piatt the afternoon before the fire.

(5) A direction to Piatt to use a portion of funds, which were otherwise owed to the defendant, to pay Houser $500, which was the sum that Piatt had offered to pay Houser for burning the defendant's house.

This combination of facts sufficiently supports cogent portions of Piatt's testimony and establishes evidence from which an inference as to the involvement of the defendant may be made, independently of Piatt's testimony.

There are, of course, substantial issues of credibility. There is conflicting testimony. But these matters were resolved by the verdict of the trier of fact. Here, the issue is one of sufficiency, and we conclude that sufficient evidence existed to support the testimony of the accomplice, as required by R. C. 2923.03(D).

Accordingly, the judgment of the Court of Common Pleas of Mercer County is affirmed.

*Judgment affirmed.*

GUERNSEY, P. J., and MILLER, J., concur.