DECISION AND JUDGMENT ENTRY
{¶ 1} Wesley D. Johnson appeals his aggravated burglary and felonious assault convictions and sentences in the Vinton County Common Pleas Court. On appeal, Johnson first contends that the trial court abused it discretion when it allowed the State to introduce evidence of a prior bad act, i.e., the sale of cocaine to the victim. Because we find the prior bad act testimony relevant to show motive and because the probative value of such evidence outweighs any prejudice to Johnson, we disagree. Johnson next contends that insufficient evidence supports the jury's verdicts. Because, after viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the crimes of aggravated burglary and felonious assault proven beyond a reasonable doubt, we disagree. Johnson next contends that the verdicts are against the manifest weight of the evidence. Because *Page 2 
substantial evidence supports the verdicts, we disagree. Johnson next contends that the trial court committed plain error when it failed to give a jury instruction regarding the credibility of accomplice testimony pursuant to R.C. 2923.03(D). Because Johnson has not shown that, but for the trial court's failure to give the required jury instruction, the outcome of the trial would clearly have been otherwise, we disagree. Johnson next contends that his trial counsel's failure to request the jury instruction on accomplice credibility or to object to its exclusion constitutes ineffective assistance of counsel. Because Johnson failed to show how the court's failure to give the jury instruction prejudiced him, we disagree. Johnson next contends that his sentences were not consistent with sentences imposed for similar crimes committed by similar offenders. We disagree. Johnson next contends that his four year prison sentence and his white co-defendants two year sentences violate the equal protection clauses of our state and federal constitutions. Because the trial court followed the sentencing guidelines and did not base its difference in the sentences on race, we disagree. Finally, Johnson contends that the cumulative error rule requires reversal of his convictions and sentences. Because multiple errors did not occur at Johnson's trial, we disagree. Accordingly, we overrule all of Johnson's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} A Vinton County Grand Jury indicted Johnson for aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1) and felonious assault, a *Page 3 
felony of the second degree, in violation of R.C. 2903.11(A)(1). Johnson pled not guilty and the matter proceeded to a jury trial.
 {¶ 3} At trial, the State introduced evidence showing that the two offenses were the result of a beating that occurred in the home of Jason Keffer in the late evening hours of October 12, 2004. On that night, Johnson, along with three other individuals, Samuel Brooks, Joseph Carter and Dustin Moore, set out to find Keffer. Keffer owed Brooks and Johnson money as a result of a drug debt. Carter was upset because Keffer was seeing Angela Barnhart, a former girlfriend of Carter. That night, the four men drove to Keffer's home and kicked down his front door. Keffer was then beaten severely with, inter alia, a hammer, baseball bat and a curtain rod. The testimony differed over who actually took part in the beating of Keffer. However, undisputed testimony showed that all four men entered Keffer's home that night after breaking down the front door.
 {¶ 4} Before the attack, Barnhart, Keffer and a David Green, were at Keffer's home smoking crack and drinking whiskey. After the night of partying, Green passed out on a couch while Keffer and Barnhart went upstairs to Keffer's bedroom. Thereafter, Keffer and Barnhart heard a loud noise at his back door. They then heard what sounded like wood splintering, as if somebody had kicked in a door. Barnhart got up, looked downstairs toward the front door and saw Brooks and Carter. Brooks carried a baseball bat while Carter carried a hammer. Barnhart heard Carter call out her name and demand that she come downstairs. Frightened, she hid in an upstairs bathroom for *Page 4 
a minute or two. During her hiding, she testified that she only heard Brooks and Carter beat Keffer.
 {¶ 5} Barnhart then fled the bathroom and ran downstairs. Downstairs, she saw another two men, one white man she had never seen before and Johnson, a black man, standing in a corner. According to Barnhart, Johnson had no weapon in his hands, made no movements whatsoever and said nothing to her. She fled outside through the kicked-in front door and hid underneath a deck for a minute or two until all four men left.
 {¶ 6} Keffer's version of the attack differs from Barnhart's recollection. According to Keffer, soon after hearing his front door kicked in, all four men, including Johnson, ran up the stairs of his home and into his bedroom. According to Keffer, all four men, including Johnson, beat him. Keffer testified that Johnson never struck him with his fist, but did hit him in the face with a curtain rod.
 {¶ 7} Brooks testified that Johnson kicked in the door of Keffer's home and that Brooks alone went upstairs while the other three men stayed downstairs. When Brooks got upstairs, he saw Keffer with a gun in his lap. Keffer admitted that he had a gun in his lap, but that he could not bring himself to shoot anyone. Brooks asked for the gun, but Keffer refused. Brooks and Keffer then wrestled for the gun, and while both fought to get the gun, it went off. The bullet went through the floor and lodged in a wall on the first floor. Johnson and Carter then joined Brooks upstairs and an argument began between Keffer and the three men, and the three men then began beating Keffer. According to Brooks, Johnson hit Keffer with, inter alia, a curtain rod during the attack. Brooks also testified that after the attack, Johnson stole Keffer's gun. *Page 5 
 {¶ 8} Carter, during his combative testimony, stated that he was in a fit of rage at the time of the attack and does not remember anyone in the house except for Moore. Moore, on the other hand, testified that Johnson and Brooks went upstairs immediately after breaking in the door and that he personally witnessed Johnson hit Keffer with a steel or metal curtain rod. Physical evidence photographed at the scene confirmed that someone removed a curtain rod from the wall of Keffer's bedroom; that it had a dent in it; and that "red stuff" covered it, presumably blood.
 {¶ 9} Officers subsequently arrested all four men. Brooks testified that he currently was incarcerated in the Pickaway Correctional Institution for four years as a result of the attack on Keffer and for a cocaine trafficking offense from Athens County. He stated that he received two years for the trafficking in cocaine offense. Carter testified that he faced a total of eighteen years in prison as a result of charges stemming from the attack on Keffer, but that he pled guilty to lesser charges in a plea agreement and received a two year sentence as a result of the attack. Moore testified that the State originally charged him with aggravated burglary and aggravated assault as a result of the attack on Keffer and faced a possible sentence of ten years for aggravated burglary and eight years for aggravated assault. He eventually pled guilty to complicity to burglary and received a two year sentence.
 {¶ 10} Johnson's case, however, went to a jury trial. At its conclusion, the court accepted the jury verdicts and found him guilty of aggravated burglary and felonious assault. At sentencing, Johnson requested the minimum sentence of three years, while the state requested the court to sentence Johnson to six years. The court sentenced *Page 6 
Johnson to four years. Johnson's attorney offered no objection after the oral pronouncement of sentence.
 {¶ 11} Johnson appeals, asserting the following assignments of error: I. "The trial court erred by allowing prior bad acts evidence of the sale of cocaine where the evidence was irrelevant to [prove] any element of the State's case." II. "The appellant's conviction was based on insufficient evidence." III. "The jury's verdict is against the manifest weight of the evidence." IV. "The trial court committed plain error by failing to give the required jury instruction about the testimony of accomplices, depriving the appellant of both procedural and substantive due process rights." V. "Defense counsel's failure to request the instruction on accomplice credibility or to object to its exclusion constitutes ineffective assistance of counsel." VI. "The sentence imposed by the trial court violates the purposes and principles of sentencing contained in Ohio Revised Code section 2929.11(B)'s admonition that a sentence imposed be "consistent with sentences imposed for similar crimes committed by similar offenders." VII. "The trial court's sentence of four years given to the appellant, an African-American, while granting two year sentences to the white accomplices, violated equal protection under both the federal and state constitutions." And, VIII. "The cumulative error rule requires reversal of the conviction and sentence."
 II. {¶ 12} In his first assignment of error, Johnson contends that the trial court erred during his jury trial when it allowed testimony of his sale of drugs to Keffer. He claims *Page 7 
that such evidence is evidence of a prior bad act, which does not prove any element of aggravated burglary or felonious assault.
 {¶ 13} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." State v. Dunham, Scioto App. No. 04CA2931, 2005-Ohio-3642, ¶ 28, citing Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. "A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably." Dunham at ¶ 28, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. "When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court." Dunham at ¶ 28, citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 14} Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence "may* * *be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Thus, while evidence of other crimes, wrongs or acts committed by the accused is not admissible to show that the accused has a propensity to commit crimes, it may be relevant to show: motive, intent, the absence of a mistake or accident, or a scheme, plan, or system in committing the act in question." Dunham at ¶ 29, citing State v. Broom (1988), 40 Ohio St.3d 277, *Page 8 
paragraph one of the syllabus. Thus, "[w]hen other acts evidence is relevant for one of those limited purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused." Dunham at ¶ 29, citing R.C. 2945.59.
 {¶ 15} Here, the state introduced the evidence to show the motive for the alleged crimes. It showed that the motive was debt, i.e. the victim owed money to Johnson for prior drug deals. Therefore, pursuant to Evid. R. 404(B), this evidence was relevant to show motive.
 {¶ 16} Johnson contends that even if this evidence is relevant, the trial court erred. He claims that Evid. R. 403 required the trial court to exclude it because the danger of unfair prejudice to him substantially outweighed its probative value.
 {¶ 17} Evid. R. 403(A) states, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *."
 {¶ 18} State v. Carillo (Oct. 13, 2000), Clark App. No. 00CR0003 involved Evid. R. 404(B) and Evid. R. 403(A) issues. In Carillo, the state sought to introduce evidence that the defendant was a member of a street gang who killed another member over a drug debt owed to the gang. The state presented extrinsic evidence regarding the gang, its drug activities, and the involvement of both the defendant and the victim. Id. The defendant sought to exclude this evidence on the grounds that such evidence of prior bad acts was specifically precluded by Evid. R. 404(B) and that the probative value of such evidence was outweighed by its highly prejudicial effect under Evid. R. 403(A). Id. The Second District Court of Appeals disagreed, holding that "[s]uch *Page 9 
evidence was admissible to prove [defendant's]* * *motive for murdering* * *"the victim." Id. Further, the court held that "[t]he evidence at issue* * *was probative of those matters [regarding motive and the circumstances of the relationship between the defendant and victim], and that probative value was not substantially outweighed by the danger of unfair prejudice." Id., citing State v. Bobo (1989), 65 Ohio App.3d 685.
 {¶ 19} Here, Keffer testified that he owed Johnson money for drugs that he purchased a couple days before the attack. Keffer also testified that Johnson was upset about this debt. Brooks later testified that immediately before the attack, Johnson argued with Keffer about this debt. In fact, Brooks testified that Johnson "was pretty upset because Jason owed him money* * *." Moore specifically testified that the attack occurred because Keffer "owed them money." We find these facts similar to the facts in Carillo. Hence, we find the bad acts testimony relevant to show motive and the probative value of such evidence outweighs any prejudice to Johnson. Therefore, we find that the trial court did not abuse its discretion in allowing this testimony into evidence.
 {¶ 20} Accordingly, we overrule Johnson's first assignment of error.
 III. {¶ 21} In Johnson's second assignment of error, he asserts that insufficient evidence supports the jury's verdicts. He contends conflicting evidence existed on whether he was an assailant in the attack or whether he merely stood in a corner.
 {¶ 22} The function of an appellate court, when reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, "is to examine *Page 10 
the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, Pickaway App. No. 06CA7, 2007-Ohio-502, ¶ 33, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v.Virginia (1979), 443 U.S. 307, 319.
 {¶ 23} The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." Smith at ¶ 34, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Smith, at ¶ 34, citing Jackson, 443 U.S. at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." Smith, at ¶ 34, citing State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} The offense of aggravated burglary is set forth in R.C. 2911.11(A), which states that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if* * *[t]he offender inflicts, or attempts or *Page 11 
threatens to inflict physical harm on another* * *[or] [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 25} The offense of felonious assault is set forth in R.C. 2903.11(A), which states that "[n]o person shall knowingly* * *[c]ause serious physical harm to another* * *[or] [c]ause or attempt to cause physical harm to another* * *by means of a deadly weapon or dangerous ordnance."
 {¶ 26} Here, sufficient evidence supports Johnson's conviction for aggravated burglary and felonious assault. It is the responsibility of the trier of fact to fairly resolve conflicts in the testimony and to decide the issue of credibility. Smith, supra. All of the accomplices testified that all of them went over to Keffer's home because they were angry with Keffer (though each had a separate reason). Brooks testified that when they arrived at Keffer's home, Johnson kicked in the door while Keffer, Green and Barnhart were all inside. Trial testimony established that Johnson eventually ended up in Keffer's bedroom and participated in the attack. In fact, Brooks, Moore and Keffer all testified that Johnson struck Keffer in the face with a metal curtain rod. Keffer testified that he suffered severe injuries as a result of the attack, including, but not limited to broken bones in his face, leg, a loss of hearing and damage to his eyesight.
 {¶ 27} Therefore, after viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the crimes of aggravated burglary and felonious assault proven beyond a reasonable doubt. Consequently, sufficient evidence supports Johnson's convictions. *Page 12 
 {¶ 28} Accordingly, we overrule Johnson's second assignment of error.
 IV. {¶ 29} In his third assignment of error, Johnson asserts that the jury's verdict was against the manifest weight of the evidence. He again contends that he merely stood in a corner. He claims that the jury must have convicted him on race instead of guilt.
 {¶ 30} "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence." Smith at ¶ 41, citing State v. Banks (1992), 78 Ohio App.3d 206, 214; State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 31} An appellate court, when "determining whether a criminal conviction is against the manifest weight of the evidence,* * *must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."Smith at ¶ 41, citing State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. See, also, Smith at ¶ 41. *Page 13 
 {¶ 32} Here, we consider the same evidence that we outlined in Johnson's second assignment of error. The jury heard two versions of the events in question. The jury heard evidence that Johnson did kick in the door and did actively participate in the assault. They also heard evidence that Johnson did not kick in the door and merely stood in a corner instead of actively participating in the assault. The jury chose to believe the former. We cannot find that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial granted. We find substantial evidence upon which the jury could reasonably conclude that all the elements of the aggravated burglary and felonious assault were proven beyond a reasonable doubt. Therefore, we find that the jury's verdicts were not against the manifest weight of the evidence.
 {¶ 33} Accordingly, we overrule Johnson's third assignment of error.
 V. {¶ 34} In his fourth assignment of error, Johnson contends that the trial court committed plain error when it did not instruct the jury regarding the credibility of accomplice testimony, pursuant to R.C. 2923.03(D). He admits that his trial attorney failed to request such an instruction, and thus, his only recourse is a plain error review. As this court notes, "absent plain error under Crim. R. 52(B), the failure to object to improprieties in jury instructions, as required by Crim. R. 30, is a waiver of the issue on appeal." State v. Doles (Sept. 16, 1991), Ross App. No. 1660.
 {¶ 35} Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. *Page 14 
When the error concerns instructions to the jury, such error "will not support the finding of plain error unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." Id., citing State v. Jackson (1991), 57 Ohio St.3d 29, 41; State v.Underwood (1983), 3 Ohio St.2d 91.
 {¶ 36} R.C. 2923.03(D) states "[i]f an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following: `[t]he testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
 {¶ 37} This court holds that "a failure to request instructions on accomplice testimony, or failure to object to the absence of such an instruction, will merit plain error treatment only where the accomplice testimony is both uncorroborated and either incredible or unreliable."Doles, supra, citing United States v. Wade (C.A. 9 1984), 740 F.2d 625;United States v. Gere (C.A. 9 1981), 662 F.2d 1291, United States v.Nabrit (C.A. 5, 1977), 544 F.2d 247. See, also, State v. Lagore (Mar. 2, 1992), Ross App. No. 1719. "The heart of the statutory charge in R.C. 2923.03(D) is the admonition that *Page 15 
accomplice testimony is to be viewed with `grave suspicion' and `weighed with great caution.'" State v. Estep (Mar. 5, 1996), Ross App. No. 94CA2072. This court, as well as other Ohio courts, holds that "one accomplice may corroborate the testimony of another." Id. See, also,State v. Pace (1984), 16 Ohio App.3d 71, 74.
 {¶ 38} Further, "Ohio courts generally look to three factors to determine whether a trial court's failure to give the accomplice instruction constitutes plain error: (1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that he benefited from agreeing to testify against the defendant; and/or (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief." State v. Bentley, Portage App. 2004-P-0053, 2005-Ohio-4648, ¶ 58, citing State v. Woodson, 10th Dist. No. 03AP-736, 2004-Ohio-5713. "[I]f the first factor and one other factor are present, the absence of the accomplice instruction will not affect the outcome of the case." Woodson, supra, at ¶ 18.
 {¶ 39} We now look at the first factor. In interpreting a previous version of R.C. 2923.03, Ohio courts held that corroborative evidence need only be "some evidence, independent of the statement by the accomplice, that `tends to connect the defendant' [citation omitted] with the crime charged. It would appear that this `other evidence' need not be necessarily of sufficient strength to, by itself, constitute proof beyond a reasonable doubt, but must directly, or by reasonable inference, connect the defendant with the crime." State v. Allsup
(1980), 67 Ohio App.2d 131, 135-136. See, also, State *Page 16 v. Beverly (Mar. 8, 1983), Clark App. No. 1787. The testimony of the victim identifying the defendant as the assailant, though not one-hundred percent certain, is sufficient corroborative or "other evidence." State v. Burrell (Mar. 31, 1983), Cuyahoga App. No. 45379.
 {¶ 40} Here, the first accomplice to testify was Brooks. He testified that Johnson kicked in Keffer's door, and upon entering Keffer's apartment, Brooks alone went upstairs while the other three stayed downstairs. When Brooks got upstairs, he saw Keffer with a gun in his lap. Brooks asked for the gun, but Keffer refused. Brooks then got the gun away from Keffer, and while trying to get the gun away, it went off. Johnson and Carter then came up the stairs, and an argument began. Brooks testified that he and Johnson were upset with Keffer because Keffer owed them money. Carter was upset with Keffer because Keffer was with Carter's girlfriend. Then, according to Brooks, Johnson hit Keffer with, inter alia, a curtain rod.
 {¶ 41} Carter was the second accomplice to testify. During his combative testimony, Carter stated that he was in a fit of rage at the time of the attack and does not remember what anyone else did inside Keffer's apartment other than Moore standing by the door.
 {¶ 42} Moore was the final accomplice to testify. He testified that either Johnson or Brooks kicked in the door at Keffer's apartment. Moore said that Johnson and Brooks went upstairs to Keffer's bedroom immediately after breaking in the door. Moore also stated that he saw Johnson hit Keffer with a steel or metal curtain rod, which corroborates Brooks' testimony. *Page 17 
 {¶ 43} In addition to the testimony of Johnson's three accomplices, the State offered the testimony of Barnhart. She testified that she only saw Carter and Brooks upstairs during the time she was inside the house. When she fled the house she saw Johnson downstairs standing in a corner. According to her, Johnson made no movements, had nothing in his hands and said nothing.
 {¶ 44} Keffer, on the other hand, testified that after his front door was kicked in, Brooks, Carter, Moore and Johnson all ran up the stairs of his apartment to the bedroom and started beating him. Keffer testified that he did not recall Johnson striking him with his fist, but that Johnson did hit him with a curtain rod in the face. The State asked Keffer, "Did Wesley Johnson actually do anything as far as for getting beat up? Did he actually strike you with anything?" Keffer responded, "Yeah, I believe he did, yes." The State asked, "What did he hit you with?" Keffer responded, "A curtain rod." Keffer also identified a photograph showing the curtain rod in his bedroom, to which Keffer testified that the "red stuff" shown on the curtain rod in the photograph was not present before the attack. Further, Keffer testified that a dent shown in the curtain rod was not present before the attack. Sergeant Justice also testified that he saw a curtain rod with "red stuff" on it.
 {¶ 45} Thus, we find that the testimony of Brooks was corroborated by Moore (another accomplice), Keffer (the victim), and the physical evidence at the scene (the curtain rod itself). Consequently, the first factor is satisfied. See Woodson, supra.
 {¶ 46} We next determine the second factor, i.e., if the jury was aware that the accomplices benefited from their testimony. Carter and Moore testified that they both *Page 18 
made plea agreements. Moore denied that he made any deal that included testifying against Johnson. However, throughout closing argument, Johnson's attorney argued that Barnhart was the only witness that offered unbiased testimony because she had nothing to gain or lose. Johnson's attorney spoke about the "deals" the accomplices received, that they were looking at eighteen years in prison but made a deal to get lesser sentences. Johnson's attorney further implied during his closing, without objection by the State, that the accomplices and the victim all apparently agreed that if they were all going down, "let's take Wesley Johnson with us * * * [i]f we can implicate him, we've got something to try to sweeten our negotiated plea with." Thus, Johnson made the jury aware of potential benefits, instead of actual benefits, the accomplices received for their testimony. However, final arguments to the jury are not evidence. Thus, we cannot find from the evidence that the jury was aware from the accomplice's testimony that he benefited from agreeing to testify against the defendant. Consequently, the second factor is not satisfied.
 {¶ 47} Finally, in regards to the third factor, during the charge to the jury, the court instructed the jury to "determine the credibility of all witness and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives. These tests include the appearance of each witness upon the stand; his or her manner of testifying; the reasonableness of the testimony; the opportunity he or she had to see, hear and know the things concerning which they testified; his or her accuracy of memory; frankness or lack of it; intelligence, interest and bias, if any; together with all the facts *Page 19 
and circumstances surrounding the testimony. Applying these tests, you will assign to the testimony of each witness such weight as you deem proper. You are not required to believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief." Thus, we find that the trial court properly instructed the jury on its duty to evaluate the credibility of the witnesses' testimony and to determine whether it should be believed. Consequently, the third factor is satisfied.
 {¶ 48} Therefore, because the first and third factors of theWoodson test are satisfied, Johnson has not shown that, but for the trial court's failure to give the required jury instruction, the outcome of the trial would clearly have been otherwise. Consequently, Johnson has not shown plain error.
 {¶ 49} Accordingly, Johnson's fourth assignment of error is overruled.
 VI. {¶ 50} In his fifth assignment of error, Johnson asserts that his trial attorney's failure to request the jury instruction set forth in R.C. 2923.03(D), and his failure to object to its omission in the court's charge amounts to ineffective assistance of counsel. This court holds that "a criminal defendant has a right to assistance of counsel which includes the right to effective assistance of counsel." Doles,supra., citing McCann v. Richardson (1970), 397 U.S. 759, 770 at fn. 14. "In reviewing this argument, we are admonished to `be highly deferential' to counsel's performance and `indulge a strong presumption that counsel's conduct falls within the wide range of reasonable *Page 20 
professional assistance." Id., (emphasis omitted), citing State v.Bradley (1989), 42 Ohio St. 3d 136, 142.
 {¶ 51} In determining whether a defendant's "counsel's assistance was so defective as to require a reversal of the conviction[,]" the defendant must satisfy a two pronged analysis. Doles, supra, citingStrickland v. Washington (1984), 466 U.S. 668, 687. The defendant must first "show that counsel's performance was deficient." Doles, citingStrickland v. Washington (1984), 466 U.S. 668, 687. In satisfying the first prong, defendant must prove that his attorney "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Id. The second prong requires the defendant to prove "that the deficient performance prejudiced the defense." Id. In satisfying the second prong, the defendant must show that his attorney's "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Defendant must satisfy both prongs in order to show ineffective assistance of counsel. Id.
 {¶ 52} In Doles, defendant argued that the trial court instructed the jury pursuant to R.C. 2923.03(D) on one count but committed plain error when it failed to instruct the jury pursuant to R.C. 2923.03(D) on several other counts against him. Id. Further, defendant argued that he was deprived of effective assistance of counsel when his attorney failed to insist "that the accomplice charge of R.C. 2923.03(D) be given * * *." Id. In response, this court held that, even if the court erred in not giving the instruction with regard to each count, the error did not amount to plain error because "the outcome of the trial would [not] have been any different if the instruction was given." Id. Further, *Page 21 
because any failure to give the instruction was not plain error, defendant's ineffective assistance of counsel claim must also fail. Id. See, also, State v. Horsley, Franklin App. No. 05AP-350, 2006-Ohio-1208, ¶ 41
(holding that "[d]efense counsel's failure to object does not automatically become an ineffective assistance of counsel unless the failure to object rises to the level of plain error"), citing State v.Koogler (Sept. 6, 1984), Franklin App. No. 84AP-221, and United Statesv. DeWolf (C.A.1, 1982), 696 F.2d 1.
 {¶ 53} Here, because we found in Johnson's fourth assignment of error that the court's failure to give the jury instruction provided for in R.C. 2923.03(D) does not rise to the level of plain error, we find that counsel's failure to request the same instruction fails to meet the second prong of the Strickland test. Consequently, we do not find Johnson's trial counsel ineffective.
 {¶ 54} Accordingly, we overrule Johnson's fifth assignment of error.
 VII. {¶ 55} In Johnson's sixth assignment of error, he contends that the trial court erred when it sentenced him to serve four years in prison. Essentially, Johnson asserts that his accomplices received two-year sentences as a result of their plea agreements and his four year sentence on those same or similar offenses is inconsistent. Thus, he maintains that the trial court violated R.C. 2929.11(B).
 {¶ 56} R.C. 2929.11(B) states that "[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." As this court has noted, "the General Assembly has not identified the means by which the courts should attain this goal." State v. Wilson, Washington App. No. 04CA18, *Page 22 2005-Ohio-830, ¶ 41, citing State v. Miniard, Gallia App. No. 04CA1, 2004-Ohio-5352, ¶ 53, and State v. McSwain, Cuyahoga App. No. 83394,2004-Ohio-3292, ¶ 47. "Courts do not have the resources to assemble reliable information about sentencing practices throughout the state." Id., citing Miniard, and State v. Haamid, Cuyahoga App. Nos. 80161 and 80248, 2002-Ohio-3243.
 {¶ 57} Regardless, this court holds that "[a]n offender cannot demonstrate inconsistency merely by supplying a list of cases where other defendants in other cases received prison sentences that differed from his." Wilson at ¶ 42. Instead, "[e]ach case is necessarily, by its nature, different from every other case — just as every person is, by nature, not the same." Id., citing State v. Lathan, Lucas App. No. L-03-1188, 2004-Ohio-7074, ¶ 25. "The goal of the sentencing guidelines is consistency, not uniformity." State v. Coburn, Adams App. No. 03CA774, 2004-Ohio-2997, ¶ 17.
 {¶ 58} Imposing consistent sentences "requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable." Wilson at ¶ 42. "Under this meaning of `consistency,' two defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment." Id., citing State v.Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341, ¶ 26. In fact, "there is no requirement that co-defendants receive equal sentences."State v. Lopez, Muskingum App. No. CT2006-0014, 2006-Ohio-6800, ¶ 24.
 {¶ 59} Therefore, in order for Johnson to succeed on this issue, he must "show that the trial court failed to properly consider the factors and guidelines contained in the *Page 23 
statutes, or that substantially similar offenders, committing substantially similar offenses, and having substantially similar records, behavior, and circumstances, received grossly disproportionate sentences." Coburn at ¶ 17.
 {¶ 60} Here, the record shows that Moore received a two year sentence on a conviction of complicity to burglary arising out of the attack on Keffer. The record does not show that Moore had any prior felony convictions. Carter received a two year sentence without any prior felony convictions. Brooks is serving a four year sentence as a result of a cocaine trafficking conviction and burglary (the attack on Keffer). He had previous felony forgery convictions in 1996. Johnson's situation differs from that of Moore and Carter because Johnson does have a prior felony conviction for robbery in Franklin County, Ohio, in 2003. Johnson and Brooks have a prior felony record and are now serving four year sentences for two offenses, i.e., Johnson's offenses are aggravated burglary and felonious assault and Brook's offenses are cocaine trafficking and burglary. The record further shows that Johnson requested the minimum sentence of three years during his sentencing hearing, and following the court's pronouncement of sentence, Johnson did not object. Therefore, based on these facts, we find that Johnson's sentence, which is one year more than the minimum sentence he requested at his sentencing hearing, and two years more than the sentences of Carter and Moore, both of whom had no prior felony convictions, is not grossly disproportionate to those of his accomplices.
 {¶ 61} Accordingly, we overrule Johnson's sixth assignment of error.
 VIII. *Page 24 {¶ 62} In his seventh assignment of error, Johnson asserts that his sentence violates his right to equal protection under the state and federal constitutions because Johnson, "an African American, is a member of a suspect class* * *[and] [h]is sentence is grossly disproportionate to that of the principal offender, Carter, a white man, and to that of the other accomplices, also white."
 {¶ 63} The Ohio Supreme Court has long recognized that "Section 2, Article I of the Ohio Constitution * * * is the functional equivalent of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." State ex rel. Dayton Fraternal Order of PoliceLodge No. 44 v. State Emp. Relations Bd. (1986), 22 Ohio St.3d 1, 6, citing State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6, 8. See, also, Roseman v. Fireman Policemen's Death Benefit Fund (1993),66 Ohio St.3d 443, 445, citing Sedar v. Knowlton Constr. Co. (1990),49 Ohio St.3d 193, 203 and State ex rel. Nyitray v. Indus. Comm, (1983),2 Ohio St.3d 173, 175; Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 424, citing Kinney v. Kaiser Aluminum Chem, Corp. (1975),41 Ohio St.2d 120, 123; Austintown Twp. Bd. of Trustees v. Tracy (1996),76 Ohio St.3d 353, 359.
 {¶ 64} The guarantee of equal protection of the laws means "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." State v. Gledhill (1984), 13 Ohio App.3d 372, 373. Equal protection does not prohibit the state from distinguishing between citizens, but permits only distinctions that are not arbitrary or invidious. Avery v. Midland County, Texas (1968), 390 U.S. 474, 484. *Page 25 
 {¶ 65} When no suspect class or fundamental right is involved, statutes are constitutional if the statute on its face establishes classifications rationally related to a legitimate state interest.State ex rel. Pilarczyk v. Riverside, Montgomery App. No. Civ.A. 20706,2005-Ohio-3755, ¶ 36 appeal not allowed, 107 Ohio St.3d 1683,2005-Ohio-6480, citing Cincinnati City School Dist. Bd. of Edn. v.Walter (1979), 58 Ohio St.2d 368, 373; City of Cleburne, Tex. v.Cleburne Living Ctr (1985), 473 U.S. 432, 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."). However, statute "classifications based on gender, race, national origin, or alienage are subject to heightened scrutiny." Id.
 {¶ 66} "Facially neutral legislation may be subject to equal protection attack where the statute or ordinance has been implemented in a discriminatory fashion. When challenging the application of a facially neutral statute or ordinance, the plaintiff must establish (1) that the application had a discriminatory effect, i.e., that similarly situated persons or entities were treated differently, and (2) that the unequal application was motivated by a discriminatory purpose." Id. at ¶ 37, citing Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol (C.A.6 2002), 308 F.3d 523, 533-534; Strickland v. Alderman (C.A.11 1996),74 F.3d 260, 264; Washington v. Davis (1976), 426 U.S. 229 (a facially neutral statute which had a differential racial effect does not violate the equal protection clause absent a discriminatory purpose).
 {¶ 67} Here, Johnson in essence is contending that the trial court implemented the statutes containing the sentencing guidelines in a discriminatory fashion against him *Page 26 
because he is black and his co-defendants are white. He argues that he received a four year sentence and his white co-defendants each received a two year sentence.
 {¶ 68} First, we find that Johnson did not establish that the application of the sentencing guidelines had a discriminatory effect on him. His three co-defendants were not similarly situated. Apparently, they accepted the plea bargains offered them. As a result, the trial court found them guilty of the lesser charge of burglary. The same court, after a jury trial, found Johnson guilty of aggravated burglary and felonious assault. Johnson knew that the trial court could not treat him the same as his co-defendants and receive a two year prison term because at his sentencing hearing he asked the trial court for a minimum three year sentence. In short, Johnson and his three co-defendants were not sentenced for the same offenses and, therefore, were not similarly situated.
 {¶ 69} Secondly, we find that that the unequal application of the sentencing guidelines was not motivated by a discriminatory purpose. Johnson had a prior record and a jury found him guilty of two offenses. Two of his co-defendants did not have prior records and were found guilty of a lesser offense. The other co-defendant is serving four years for the burglary offense and a prior offense. Therefore, the trial court had a legitimate purpose for sentencing Johnson to four years in prison. Consequently, Johnson failed to show the discriminatory purpose of race for his sentence.
 {¶ 70} Accordingly, we overrule Johnson's seventh assignment of error.
 XI. *Page 27 {¶ 71} In his eighth assignment of error, Johnson contends that even if the errors committed at trial were harmless, the cumulative effect of all the errors deprived him of a fair trial.
 {¶ 72} "Errors that are separately harmless may, when considered together, violate a person's right to a fair trial." State v.Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448. However, harmless or nonprejudicial "errors cannot become prejudicial by sheer weight of numbers" alone. State v. Hill (1996), 75 Ohio St.3d 195, 212. See, also,State v. Yarbrough, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶ 112.
 {¶ 73} Before a reviewing court can find "cumulative error" present, it must first find that multiple errors were committed at trial.Madrigal at 398. Secondly, it must find a "reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353.
 {¶ 74} Here, Johnson has only demonstrated one error occurred, i.e., the trial court failed to give an instruction, instead of multiple errors. Therefore, Johnson's assignment of error has no merit.
 {¶ 75} Accordingly, we overrule Johnson's eighth assignment of error.
 XII. {¶ 76} In conclusion, we overrule all of Johnson's assignments of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 28 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Harsha, J. and Abele, J.: Concur in Judgment and Opinion. *Page 1